BOURBON, ET AL. *v.* GOVERNOR OF MARY-LAND, ET AL.

[No. 24 (Adv.), September Term, 1970.]

*Per Curiam Order March 20, 1970.*
*Opinion Filed May 13, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ., and ROBERT C. MURPHY, Chief Judge of the Court of Special Appeals, specially assigned.

*Alfred L. Scanlan,* with whom were *Shea & Gardner* and *John B. Wright* on the brief, for appellants.

*Wilbur E. Simmons, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert F. Sweeney, Deputy Attorney General,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

By per curiam order of March 20, 1970, we affirmed a decree of the Circuit Court for Anne Arundel County in which Judge Evans, rejecting the declarations sought in a bill filed by appellants (citizens, taxpayers and voters), declared that the General Assembly, at its 1970 session, could repeal a bill proposing an amendment to the Constitution of Maryland (the original amendment) it had duly passed at its 1969 session and substitute a revised version (the new amendment), and that a statute which provided for the election of an interim Lieutenant Governor would not violate Art. II, § 10, of the Constitution which provides that the power of appointing civil officers is in the Governor with the advice and consent of the Senate. Judge Evans declined to rule whether or not the Legislature validly could provide in the new amendment that if both the original and the new were voted on and approved at the 1970 election, the new should prevail and become part of the Constitution.

Appellants do not here question the legality or propriety of electing an interim Lieutenant Governor, believing themselves precluded by *Buchholtz v. Hill,* 178 Md. 280, which approved the creation of an elected clerk to the Commissioners of Allegany County even, they say, "though the language of [Art. II, § 10, of the Constitution of Maryland], if read literally, would seem to argue for a different result." They have a similar reticence to challenge Judge Evans' failure to pass on the question of inconsistent amendments, a reticence that arises from their reading of *Hillman v. Stockett,* 183 Md. 641, "which indicates that an issue of this type is premature at this time and would not seasonably arise unless and until such time as the two amendments were both ratified * * *."

This leaves for consideration only the simple and direct question of whether Art. XIV, § 1, of the Constitution, which authorizes amendment of the Constitution by a proposal by the General Assembly and approval of the

proposal by the electorate, permits a subsequent regular session of a legislature to repeal and reenact with amendments a bill proposing an amendment which had been duly passed at an earlier regular session of that same legislature. Our answer is as simple and direct as the question. The legislature can validly recall and reframe a proposal for amendment of the Constitution before the specified time for submitting the proposal to the electorate arises. The reasons for our answer are also simple and direct. In Art. XIV, § 1, the people made the legislature the entity to formulate and offer to the electorate proposals for its approval or rejection for changes in the organic law and § 1 does not say or indicate that such a proposal that has not actually come before the electorate for consideration in the manner specified in § 1 may not be reconsidered and reformulated by the proposing entity. Simplicity, certainty, order and clarity in the amending process would be furthered, in our view, by submission of only the one proposal ultimately deemed suitable and appropriate, rather than by submission of two or more inconsistent versions of an idea for change, with the resultant necessity for the voters to pick and choose the better or the best and with the real possibilities that in voter disgust both or all would be rejected or, in confusion, both or all adopted.

The question before us arose in this way: during the regular session of 1969 the General Assembly proposed eight amendments to the Constitution of the State by passing Chapters 784 to 791, inclusive, of the Laws of 1969. Chapter 787 proposed creation of the office of Lieutenant Governor. By the passage of Ch. 76 of the Laws of 1969, the legislature provided for an election to be held on November 4, 1969, to permit the voters to adopt or reject the proposed amendments to the Constitution. In *Cohen v. Governor of Maryland,* 255 Md. 5, this Court held Ch. 76 to be invalid and ineffective because Art. XIV, § 1 of the Constitution of Maryland requires proposed constitutional amendments to be submitted to the voters at "the next ensuing general election" and the election

established by Ch. 76 was not in the opinion of the Court a general election. Chapter 787 of the Laws of 1969 also provided that if the amendment it proposed was ratified in 1969, the Lieutenant Governor would be elected with the Governor in 1970 but if the ratification occurred at the election of 1970 the Lieutenant Governor would be first elected in 1974 and the Governor, subject to confirmation by the General Assembly at its next regular session, would nominate a person to serve as Lieutenant Governor from 1970 to 1974.

Since the decision in *Cohen* postponed action by the voters on the proposed amendment creating the office of Lieutenant Governor until the regular election of 1970 (as it did action on the other seven proposed amendments of 1969), the General Assembly gave further thought to the amendment establishing the office of Lieutenant Governor, and when it convened in regular session in 1970 each house approved by a three-fifths vote a bill (H.B. 3), which provided that (1) Ch. 787 of the Laws of 1969 "be and it is hereby withdrawn and recalled for appropriate legislative action"; (2) Ch. 787 "be and it is hereby repealed"; (3) the Lieutenant Governor is to be first elected in 1974 and in the interim between 1970 and 1974 "the person, if any, who in November, 1970, is elected to the statutory position of Lieutenant Governor shall assume and hold the constitutional office of Lieutenant Governor for a regular four year term which begins on the same day as the term of the Governor-elect." [1]

---

1. The "statutory position of Lieutenant Governor referred to in H.B. 3 was created by H.B. 4, the relevant portions of which are:
　　"(d) The Lieutenant Governor shall perform the functions and duties assigned to him by the Governor from time to time; but no power specifically vested in the Governor by the Constitution of this State may be assigned to the Lieutenant Governor.
　　　　　* * *
　　"(f) If the Constitution of Maryland is amended to establish the Lieutenant Governor as a constitutional office, the person elected to and holding office under this section shall be the Lieutenant Governor under the constitutional office for the remainder of the term then existing.
　　"(g) If the proposed constitutional amendment to cre-

H.B. 3 further provided that if a court held the recall and repeal of Ch. 787 and the substitution of the amended version were ineffective, with the result that Ch. 787 must be submitted to the voters in 1970, both that chapter and the amendment proposed by H.B. 3 should be on the ballot at the general election of November 1970, and that if both are ratified, H.B. 3 should prevail over Ch. 787.

Article XIV, § 1, of the Constitution provides that the General Assembly may propose amendments to the Constitution, that each amendment shall be embraced in a separate bill "embodying the Article or Section, as the same will stand when amended," that such a bill shall be passed by three-fifths of all the members of each house "by yeas and nays, to be entered on the Journals with the proposed Amendment." The bill or bills "proposing amendment or amendments" shall be published in specified newspapers "once a week for four weeks immediately preceding the next ensuing general election, at which the proposed amendment or amendments shall be submitted, in a form to be prescribed by the General Assembly, to the qualified voters of the State for adoption or rejection." The votes cast are to be returned to the Governor and if it appears to him that a majority were cast in favor of the amendment he shall so proclaim "and thenceforth said amendment or amendments shall be part of the said Constitution." When two or more amendments are submitted they shall be so submitted that each shall be voted on separately.

It is clear that in acting under a provision in a State constitution like Art. XIV, § 1, the legislature does not exercise its ordinary legislative power or any sovereignty of the people that has been entrusted to it but acts under a limited power which the people have conferred upon it and which with equal propriety and appropriateness

ate the constitutional office of Lieutenant Governor is not submitted to the qualified voters of the State of Maryland in November, 1970, or is rejected by the qualified voters of the State, then these aforegoing subsections creating the statutory position of Lieutenant Governor shall be void on December 1, 1970."

might have been conferred upon either house, the governor, a special commission or other body or tribunal. In proposing amendment of the Constitution the legislature does not have the plenary powers it has in enacting laws but only the powers specifically delegated to it. Jameson, *Constitutional Conventions* (4th ed.), Ch. VIII, §§ 538-574, 16 Am. Jur. 2d, *Constitutional Law* § 32, p. 205. In *Board of Supervisors of Elections v. Attorney General,* 246 Md. 417, 428-429, we had occasion to note that:

> "Commentators, lay and judicial, concur almost unanimously in the view that the general power of a state legislature to make, alter and repeal laws, pursuant to the constitution by which the people created the legislature, does not include the power or the right to make or remake the fundamental law, the constitution. A state constitution may aptly be likened to a legislative act enacted directly by the people themselves in their sovereign capacity as a political entity (that is, by the voters, for 'the original power of the people, in their aggregate political capacity, is delegated in the form of suffrage to such persons as they deem proper,' *Anderson v. Baker,* 23 Md. 531, 619), and therefore is the fundamental, extraordinary act by which the people establish the structure and mechanism of their government. Cooley, *Constitutional Limitations* (8th Ed.), p. 355; Jameson, *Constitutional Conventions,* pp. 84-86, 422 and 586; Hoar, *Constitutional Conventions,* pp. 80-82; 16 Am.Jur.2d, *Constitutional Law* § 26; *Staples v. Gilmer* (Va.), 33 S.E. 2d 49, 53; *Ellingham v. Dye* (Ind.), 99 N. E. 1; *State v. Cox,* 8 Ark. 436, 444. Essentially, a constitution is fundamental legislation directly by the people acting politically in their sovereign capacity, while a law is a rule of conduct prescribed by the legislative agents of the people under and subject to the

delegated limitations of the previously ordained superior legislation, the Constitution.

"This Court has recognized that laws and legislative actions relating to amendment or revision of the constitution differ greatly and significantly from one another."

In *Warfield v. Vandiver*, 101 Md. 78, this Court held that a bill proposing an amendment to the Constitution need not be submitted to the Governor for signature because it was not a potential *law* enacted *under* the Constitution but a potential *part of the Constitution.* Judge McSherry for the Court said (pp. 113-115 of 101 Md.):

"Upon turning to and reading Art. 14 it must be conceded that its language is clear, explicit and unambiguous. It does not say that the General Assembly *and* the Governor, or the General Assembly *with the approval* of the Governor, but 'The *General Assembly* may propose amendments to this Constitution, provided, that each amendment shall be embraced in a separate bill, etc.' Such a proposal is not legislation. It is required to be passed by 'three-fifths of all the members elected to each of the two houses,' whilst a majority only is needed for the adoption of legislative measures; and even after receiving the prescribed number of votes in both houses it continues to be a *bill* and never becomes a *law*, though if adopted by the vote of the people it is thereafter incorporated in the Constitution. 'The bill or bills proposing amendment or amendments shall be published by the order of the Governor, etc.' The thing to be published is a *bill* proposing an amendment. * * * The right which the Governor has to sign or to veto is strictly confined to *bills* which when signed, or if vetoed, when passed by the requisite vote over the veto, become *laws*. Hence, the test as to whether a particular measure adopted

by the General Assembly is one which the Governor must sign to give it efficacy, is the fact that when signed it becomes, at once and in virtue of being signed, a *law* and thereupon ceases to be a *bill*. 'Every *bill* * * * shall, before it becomes a *law,* be presented to the Governor, etc.' If he sign it, it will become a *law*. If he does not approve it, and the two houses pass it by a three-fifths vote over his veto it will also become a *law*. Obviously, then, the measures which the Governor has the authority to sign or veto, are only such as when signed, or when passed over his veto become *laws*. A bill proposing an amendment to the Constitution and nothing more, would *not* become a *law* if signed by the Governor nor would it become a *law* if passed by three-fifths vote over his veto; because it is required to be submitted to the people for *their* adoption or rejection; and not until it shall appear that a majority of the votes cast at the polls on such proposed amendment are in favor thereof can the Governor proclaim that it has been 'adopted by the *people* of Maryland as *part of the Constitution.*' It is not operative unless adopted by the *people*—it is a mere proposal to amend until sanctioned by them; and when adopted by *their* votes it becomes, not a *law* in the sense in which that word is used in the Constitution, but a *'part of the Constitution.*' To hold otherwise would lead to an anomalous situation, for if the bill proposing an amendment must be signed by the Governor before being submitted to a vote of the people, then the moment it is signed by him, it becomes, under *sec. 17, Art. 2,* a *law* with all the incidents and consequences which that term carries and conveys, notwithstanding the fact that it is wholly inoperative as a law or in any other way unless and until *adopted* by the people."

Dodd, at page 150 of his book *The Revision and Amendment of State Constitutions* gives the *Vandiver* decision, correctly we think, this interpretation:

"The Maryland Court said that the word 'bill' was used in the amending clause simply to express a proposal or project, and not in the same manner as the word was used elsewhere in the constitution to refer to bills which should become law by legislative enactment and executive approval."

Thus this Court has held that the people in Art. XIV, § 1, of the Constitution have delegated to the legislature the power to suggest, to propose, to offer to the electorate a proposal or project for their adoption or rejection. This proposal or project is to be set forth in a bill passed as specified. The bill which is the proposal or project is inoperative unless and until adopted by the voters. To use the loose analogy of contract law, the legislature makes an offer to the people which the people have no chance or right to accept until it is, as directed by § 1, published during the weeks immediately preceding the election at which the offer is to be accepted or refused by the voters. If a bill embodying an amendment is no more than a proposal and is inoperative from its passage until its adoption by the electorate, as the decisions have held is the case, we see no obstacle to the conclusion that the people did not reserve a vested right to vote on a formalized proposal for amendment that has not yet been published, and we think the same legislature that has made a proposal under the power conferred on it by the people in § 1 can later reconsider its action and offer another proposal, formalized as § 1 requires.

The anomaly of using the legislature, a creature of the Constitution, to act to some extent in legislative fashion to provide the mechanics for the people to change that Constitution has not gone unnoticed. In *Board of Supervisors of Elections v. Attorney General*, this anomaly was pointed out, the Court saying (p. 432 of 246 Md.):

"To use the Legislature, a body created by the constitution, to provide the mechanics and sinews for changing that constitution by ascertaining the will of the people, * * * and at the same time to class their legislative actions as not encompassed by the provisions of the constitution as to laws may at first thought seem so illogical as to be unsound. Yet it has been accepted generally as sound and proper."

As we see it, the people contemplated in adopting § 1 that in making a proposal for amendment the legislature necessarily would avail itself of some of the powers and procedures customarily used in legislating. We find no necessity to hold that the powers contemplated in the delegation of § 1 do not include the power to recall, revise and reframe a proposal for amendment up to the time it must be published by the Governor. Compare *Baltimore Fidelity Warehouse Co. v. Canton Lumber Company*, 118 Md. 135.

Cases in other States are not particularly helpful since in all but one the time or extent of reconsideration involved, or both, is substantially different from this case and, for the most part, they are advisory opinions which offer no reasoned basis for the result reached, but they do support the conclusion we have reached.[2]

Appellants argued that uncertainty, looseness and confusion would flow from permitting what they challenge. As we said earlier, to us it appears that certainty, order and clarity will be promoted by affirmance of the decree appealed from.

---

2. The case of In re Senate Concurrent Resolution (Colo., En Banc), 328 P. 2d 103, held that the recall and amendment in substance of a prior proposal for amendment of the Constitution by a subsequent session of the legislature would be valid and proper. *See also* Crawford v. Gilchrist (Fla.), 59 So. 963; In re Opinions of the Justices (Ala.), 39 So. 2d 665; Opinion of the Justices (Mass.), 135 N.E.2d 741; In re Opinion of the Justices (Mass.), 197 N. E. 95; Clements v. Powell (Ga.), 116 S. E. 624.