MORRIS *v.* GOVERNOR OF MARYLAND ET AL.

[No. 125 (Adv.), September Term, 1971.]

*Per Curiam Order June 25, 1971.*

*Opinion Filed September 17, 1971.*

### PER CURIAM ORDER

For reasons to be stated in an opinion to be filed later, it is this 25th day of June, 1971

ORDERED by the Court of Appeals of Maryland that the action of the Circuit Court for Anne Arundel County in declaring in its decree of June 23, 1971 that the Constitutional amendments denoted on the ballot in the General Election of November 3, 1970 as questions 1, 2, 4, 5, 6, 7, 8 and 9 had been constitutionally adopted and were effective parts of the Constitution, be, and it is hereby, affirmed with costs; and it is further

ORDERED that the mandate be issued forthwith.

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Elizabeth M. Eckhardt* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

At the general election of November 3, 1970 the voters approved eight amendments to the Constitution of Maryland.[1] The appellant, a resident of Howard County,

---

1. The amendments, identifying them by their respective Ballot Question Numbers, were No. 1 (creation of the office of Lieutenant Governor); No. 2 (creation of the District Court); No. 4 (creation of a General Assembly Compensation Commission); No. 5 (membership and reapportionment of the General Assembly); No. 6 (period of residency required to be eligible to vote); No. 7 (authorizing the Governor to make changes in the organization of the Executive Branch); No. 8 (establishing for any county an alterna-

a payer of local and State taxes, and a voter, on March 18, 1971 filed a petition seeking a declaration that each proposed amendment had been unconstitutionally placed on the ballot, that each had been unconstitutionally submitted to the electorate and that, therefore, despite the approval given each amendment by the voters and the resulting proclamation of the Governor that each of the amendments had been adopted by the people as part of the Constitution of Maryland, the several amendments had not been constitutionally adopted and had never become part of the Constitution.

Judge Evans declared on June 23, 1971 that all eight of the amendments had been constitutionally adopted and were effective parts of the Constitution. After consideration of the briefs and oral arguments of the parties, we affirmed by per curiam order of June 25, 1971 and we now give our reasons for so doing.

The standing of the appellant to request and receive the judicial declarations as to whether the eight amendments involved have become part of the Constitution of Maryland has not been challenged. She urged upon us two main propositions. First, the General Assembly did not follow the mandate of Art. XIV, § 1 of the Constitution and itself prescribe the form in which each amendment was to be submitted to the voters but rather, impermissibly and ineffectively, redelegated to the Secretary of State the function in this regard that the people had delegated by the Constitution to the legislature. Second, each ballot title was fatally faulty and unconstitutional in that each was "misleading, vague, nondescriptive" and disguised and misstated the purpose and effect of its respective amendment.

The Attorney General replied by asserting that the courts cannot go behind the executive's proclamation that a proposed amendment has been adopted by the people and become part of the Constitution, and since the

---

tive procedure for adopting a charter form of government) ; No. 9 (permitting on a voluntary basis reference to a Supreme Being and prayer in any governmental school, institution or place).

appellant's suit was not filed until some four months after the proclamation, the matter was beyond judicial reach. Further, he urges that there had been no unconstitutional delegation to the Secretary of State but, assuming there had been, the will of the people expressed at the voting machines should not be thwarted after the fact, and finally that the ballot titles were sufficient fairly to apprise the voters of the amendments presented to them for adoption or rejection.

The cases offer support for the argument of the Attorney General that the courts are without jurisdiction in the matter once the Governor has proclaimed that a constitutional amendment has been adopted by the voters and has become part of the Constitution. *Miles v. Bradford,* 22 Md. 170, 184-185; *Anderson v. Baker,* 23 Md. 531, 615; *Worman v. Hagan,* 78 Md. 152, 165; *Board v. Attorney General,* 246 Md. 417, 429. But as the Court suggested in *Anderson v. Baker* at page 628 of 23 Md., there may be such a clear case as to warrant judicial intervention in a political area. Therefore, while we do not reject the principle primarily contended for by the Attorney General, we see no need now to invoke it, preferring to rest our decision on the merits.

We do not agree with the appellant. Article XIV, Sec. 1 of the Maryland Constitution provides in part that:

> "The bill or bills proposing amendment or amendments shall be published by order of the Governor in at least two newspapers in each County * * * and in three newspapers in the City of Baltimore, once a week for four weeks immediately preceding the next ensuing general election, at which the proposed amendment or amendments shall be submitted, in a form to be prescribed by the General Assembly, to the qualified voters of the State for adoption or rejection."

It is stipulated that the text of each constitutional amendment was published once a week for four weeks imme-

diately preceding the general election of November 3, 1970 in each of sixty-eight newspapers throughout the State in compliance with the directions of Sec. 1 of Art. XIV, at a cost of over $150,000.

Each bill proposing an amendment concluded with the following language:

> "That the foregoing sections hereby proposed as amendments to the Constitution of Maryland, by Section 3 of this Act, at the next ensuing general election to be held in this State, shall be submitted to the legal and qualified voters thereof for their adoption or rejection in pursuance of directions contained in Article 14 of the Constitution of this State, and at the said general election, the vote on the said proposed amendments to the Constitution shall be by ballot, and upon each ballot there shall be printed the words 'For the Constitutional Amendments' and 'Against the Constitutional Amendments' as now provided by law, and immediately after said election, all returns shall be made to the Governor of the vote for and against said proposed amendments, as directed by said Article 14 of the Constitution, and further proceedings held in accordance with Article 14."

The phrase "and upon each ballot there shall be printed the words 'For the Constitutional Amendments' and 'Against the Constitutional Amendments' as now provided by law" can only have referred to Code (1971 Repl. Vol.), Art. 33, § 16-6. Paragraph (a) thereof provides that:

> "The ballots shall contain a condensed statement in understandable language of every constitutional amendment * * *. It shall be sufficient in any case to print the legislative title, a brief summary of the contents or purpose of the proposed amendment * * * unless the act

proposing the constitutional amendment * * * specifically provides the title to be used. The Secretary of State shall prepare and certify the form in which a constitutional amendment * * * shall appear * * *."

If the legislative titles had been used on the ballots it could hardly be argued that the legislature, as a result of what it specified in each bill proposing an amendment and by its incorporating by reference the provisions of § 16-6 of Art. 33 of the Code, did not fully meet the constitutional directives in Art. XIV, Sec. 1. Appellant therefore is left only with the argument that because the Secretary of State is told by the legislature that he need not use the legislative titles but can summarize for the ballots the contents or purpose of each proposed amendment, there has been an unconstitutional delegation of legislative duties. Appellant argues earnestly that the legislature has no inherent or plenary power in performing its function in the amending process but can only do precisely what the Constitution says it can do, no more, no less. In *Board v. Attorney General, supra* (p. 432 of 246 Md.), and *Bourbon v. Governor of Maryland,* 258 Md. 252, 257-258, 262, we pointed out that, while the legislature in proposing amendments does not exercise its ordinary legislative powers or any part of the sovereignty of the people that has been entrusted to it but acts under a limited power which the people chose to confer upon it rather than upon either house, the Governor or a special commission or body, nevertheless, the people contemplated in adopting Sec. 1 of Art. XIV that the legislature, in acting under that section, would necessarily avail itself of some of the powers and procedures customarily used in legislating. We see no necessity to hold that the legislature could not prescribe the form in which an amendment was to be submitted to the voters by the general enactment which is now § 16-6 of Art. 33 of the Code, and we hold that the authority given the Secretary of State to choose between a legislative title

26

and a summary he prepared was not an impermissible delegation of legislative power. From time to time since 1896 at least (Ch. 202 of the Laws of 1896), the legislature has by general legislation prescribed to some extent the form in which a proposed constitutional amendment is thereafter to be submitted to the voters. This Court seemingly has regarded such a procedure as acceptable and valid. In *Warfield v. Vandiver,* 101 Md. 78, 126-127, the contention was made that the form of submission in Section 2 of the bill that proposed the amendment attacked should have been set forth in a separate bill. The Court noted that the Constitution:

> "in equally emphatic terms, declares that the proposed 'amendments shall be submitted *in a form to be prescribed by the General Assembly.*' Obviously this means, according to the contention of the appellee, that the same body which may propose amendments may also prescribe the *form,* that is the method, in which they shall be submitted; and section two of the franchise amendment does nothing more than prescribe a form for submission of the amendment to the vote of the people. * * * We may add this observation, *that had section two been wholly omitted, or if it were now stricken out, the Code would supply all the details and machinery needed to place the amendment on the official ballot at the next general election.*" (last emphasis supplied.)

Since the passage of Ch. 739 of the Laws of 1957, the Secretary of State has been authorized to and has prepared ballot titles for proposed amendments. See Code (1947 Cum. Supp.), Art. 33, § 62, and (1957), Art. 33, § 94 (i). This approach met the approval of Attorney General Hammond in 33 O.A.G. 178, and was approved by the voters as to questions put to referendum, see Art. XVI, Sec. 5 (b) of the Constitution. The legislature in § 16-6 of Art. 33 provided ample standards for the Sec-

retary of State, such as a "condensed statement in understandable language," the "legislative title," "a descriptive title in boldface type containing not more than three words." The delegation, such as it is, meets the tests this Court has heretofore laid down with approval. *Givner v. Commissioner of Health,* 207 Md. 184; *Baltimore County v. Mo. Realty,* 219 Md. 155; *Turf Valley Associates v. Zoning Board of Howard County,* 262 Md. 632. We see no more improper delegation here of legislative duty than there is of judicial duty when a court reporter rather than the court writes the official syllabus of the opinion of the court.

We shall not discuss the ballot titles in detail, finding no substance in the claim that they were inadequate or misleading.

Using the tests of the sufficiency of legislative titles, we find the ballot titles here challenged beyond successful attack. *Allied American Co. v. Commissioner,* 219 Md. 607, 614; *Prince George's County v. Donohoe,* 220 Md. 362, 367. If we had doubts, we should be most reluctant after the election to rule that the voters did not know what they were voting for or against, informed as they presumably had been by the very extensive newspaper, radio and television publicity and public discussion prior to the election. *Dutton v. Tawes,* 225 Md. 484, 493-494.