626 A.2d 959

Winfield M. KELLY, Jr., Secretary of State et al.

v.

VOTE KNOW COALITION OF MARYLAND, INC. et al.

No. 54, Sept. Term, 1992.

Court of Appeals of Maryland.

Order Filed Aug. 19, 1992.

Decided June 28, 1993.

165

Ralph S. Tyler, Deputy Atty. Gen., Baltimore, for petitioners.

Joseph A. Schwartz, III, Baltimore, for respondents.

ORDER

Ch. 1 of the Acts of 1991, which was Senate Bill 162 of the 1991 legislative session, addressed the subject of abortion and revised statutory provisions relating to abortion. Ch. 1 was petitioned to referendum and is to be submitted to the voters of Maryland at the November 1992 general election, pursuant to Art. XVI of the Constitution of Maryland and Maryland Code (1957, 1990 Repl. Vol.), Art. 33, § 16–6.

The Circuit Court for Anne Arundel County, by order of August 12, 1992, declared that the ballot title language of Ch.

1, certified by the Secretary of State of Maryland, was misleading because it did not provide "a concise, intelligible and understandable summary of the principal features of SB 162. . . ." The circuit court's August 12, 1992, order also enjoined the defendants from using the certified ballot language at the November 1992 general election and directed the defendant Secretary of State of Maryland to certify new ballot language.

For reasons to be stated in an opinion later to be filed, it is this 19th day of August 1992,

ORDERED, by the Court of Appeals of Maryland, that the declaratory judgment and injunctive order of the Circuit Court for Anne Arundel County is reversed; and it is further

ORDERED by the Court of Appeals of Maryland, that the case is remanded to the Circuit Court for Anne Arundel County with directions to enter the following declaratory judgment:

> "The ballot title of Ch. 1 of the Acts of 1991, certified by the Secretary of State, is not misleading and does not violate either Art. XVI, § 5, of the Constitution of Maryland or Code (1957, 1990 Repl.Vol.), Art. 33, § 16-6. The defendants are entitled to utilize the ballot title certified by the Secretary of State at the November 1992 general election."

And it is further

ORDERED, by the Court of Appeals of Maryland, that the Circuit Court for Anne Arundel County shall enter an order denying the plaintiffs' request for an injunction.

Costs to be paid by the plaintiffs. Mandate to issue forthwith.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

An enactment of the General Assembly, signed by the Governor as Ch. 1 of the Acts of 1991, was petitioned to

referendum and scheduled to be submitted to the voters of the State in the November 1992 general election. The issue presented by this case is whether the ballot title language summarizing Ch. 1 of the Acts of 1991 was misleading. The Act addressed the subject of abortion and revised statutory provisions relating to abortion. Prior to the November 1992 general election, this Court issued an order which, *inter alia*, directed the Circuit Court for Anne Arundel County to enter the following declaratory judgment:

"The ballot title of Ch. 1 of the Acts of 1991, certified by the Secretary of State, is not misleading and does not violate either Art. XVI, § 5 of the Constitution of Maryland or Code (1957, 1990 Repl.Vol.), Art 33, § 16–6. The defendants are entitled to utilize the ballot title certified by the Secretary of State at the November 1992 general election."

This opinion sets forth our reasons for so ordering.

During the 1991 legislative session, the General Assembly passed and the Governor signed Senate Bill 162, which became Ch. 1 and which substantially revised Maryland statutes regarding abortion. The members of the Vote kNOw Coalition and others, pursuant to Art. XVI, § 1, of the Constitution of Maryland, exercised their right to petition Ch. 1 to referendum.[1]

Article XVI of the Maryland Constitution and Maryland Code (1957, 1990 Repl.Vol.), Art. 33, § 16–6, set forth the procedures governing the referendum. Section 5(b) of Art. XVI provides in part as follows:

---

1. Article XVI, § 1 provides:

 "**Reservation of power of referendum in people; article self-executing; additional legislation.**

 (a) The people reserve to themselves power known as The Referendum, by petition to have submitted to the registered voters of the State, to approve or reject at the polls, any Act, or part of any Act of the General Assembly, if approved by the Governor, or, if passed by the General Assembly over the veto of the Governor;

 (b) The provisions of this Article shall be self-executing; provided that additional legislation in furtherance thereof and not in conflict therewith may be enacted."

"All laws referred under the provisions of this Article shall be submitted separately on the ballots to the voters of the people, but if containing more than two hundred words, the full text shall not be printed on the official ballots, but the Secretary of State shall prepare and submit a ballot title of each such measure in such form as to present the purpose of said measure concisely and intelligently. The ballot title may be distinct from the legislative title, but in any case the legislative title shall be sufficient."

The Election Code, Art. 33, § 16–6(a), provides:

*"Condensed statement and descriptive title.*—The ballots shall contain a condensed statement in understandable language of every constitutional amendment or other question to be submitted to the vote of the people at any election. It is sufficient in any case to print the legislative title, a brief summary of the contents or purpose of the proposed amendment or referendum unless the act proposing the constitutional amendment or other question specifically provides the title to be used. The Secretary of State shall prepare and certify the form in which a constitutional amendment or question shall appear.... In the event the title of the bill, ordinance or resolution, as the case may be, is one hundred words or less, the title shall be sufficient. In the event the title exceeds one hundred words, a summary of the title containing not in excess of one hundred words shall be prepared and certified to the boards."

The referred legislation exceeded 200 words, precluding the full text from being placed on the ballot. Art. XVI, § 5(b). In addition, the legislative title exceeded 100 words, precluding its use. Art. 33, § 16–6. Consequently, the Secretary of State was required to summarize the legislation in 100 words or less. Pursuant to his constitutional and statutory duty, the Secretary submitted the following 100 word ballot title:

"Abortion Law Revision

"Revises Maryland's abortion law to prohibit state interference with woman's abortion decision before fetus is viable, or, under certain conditions, at any time and to provide

certain exceptions to the requirement that a physician notify an unmarried minor's parent or guardian prior to minor's abortion; repeals pre-abortion information requirements about abortion alternatives; repeals some, and clarifies other, provisions related to abortion referrals; requires that abortions be performed by licensed physicians; provides good faith immunity under certain conditions to physicians performing abortions; authorizes state to adopt abortion regulations; repeals certain penalty and disciplinary provisions related to the performance of abortions."

The plaintiffs in this case, the Vote kNOw Coalition and three women who signed the referendum petition, challenged this language in a complaint filed in the Circuit Court for Anne Arundel County on July 27, 1992. The plaintiffs named as defendants Winfield M. Kelly, Jr., the Secretary of State, and Gene M. Raynor, Administrator of the State Administrative Board of Election Laws. The plaintiffs charged that the language of the ballot title "miscasts and misrepresents the true nature and purpose of the referred law by reordering the elements of Senate Bill 162 in a manner which will have an undeniable psychological effect on the average voter and suggest a voting outcome from language which is neither neutral nor accurate ... [and that] it uses vague, ambiguous and obtuse generalizations such as 'certain conditions' and 'certain exceptions' to obscure the actual scope and effect of Senate Bill 162 and disguise crucial elements of the referred legislation...."

The plaintiffs sought a declaration that the proposed language violated the constitutional and statutory standards. They also sought an order enjoining the Administrator from placing the language on the ballot and directing the Secretary of State to reformulate the language to reflect the "order of the elements of the legislative title" and to make use of "objectively neutral and not politically charged language."

The plaintiffs and the defendants filed cross motions for summary judgment. The defendants argued that the certified language "fairly and accurately conveys to Maryland voters

the purpose of the legislation upon which they will be voting." The defendants noted that it was irrelevant whether the plaintiffs or any other person could produce a "better" ballot summary, stating that

"a hundred persons, whether lawyers or nonlawyers or Secretaries of State, could perhaps draft a hundred different ballot summaries, all of which might be meaningful and nonmisleading. That possibility is, however, legally irrelevant for the constitutional responsibility for that task in this State rests with the Secretary of State."

Rather, according to the defendants, the trial court was required to determine whether the ballot language certified by the Secretary of State " 'set forth, in understandable language the contents and purpose of the proposed referendum with that clarity and objectivity required to permit an average voter, in a meaningful manner, to exercise an intelligent choice.' *Anne Arundel County v. McDonough,* 277 Md. 271, 300[, 354 A.2d 788, 805] (1976)." The defendants urged the trial court to uphold the ballot summary in this case because it complied with the constitutional and statutory standards and was "comprehensive, accurate and understandable."

The plaintiffs complained that the Secretary of State should not have rearranged the order of the elements of the legislation but should have tracked the order in which they appeared in the legislative title. The only deviation from the order of the legislative title was the decision to move the summary of the portion of the legislation which essentially codified the Supreme Court's decision in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), from the middle to the beginning of the ballot title. The plaintiffs also asserted that the "use of vague and ambiguous generalities ... make it literally impossible for the average voter to discern the true nature, scope and effect of the referred measure." As examples of the latter, the plaintiffs pointed to the summary of the parental notification provision and objected to the fact that the specific exceptions to that provision were not articulated in the ballot title. The plaintiffs claimed that the description of the changes made to the law relating to abortion referrals was too

general. The plaintiffs argued that the ballot language fell short of the constitutional and statutory standards and was misleading.

On August 12, 1992, the circuit court declared that the ballot title language certified by the Secretary of State was misleading because it did not provide "a concise, intelligible and understandable summary of the principal features of SB 162...." The circuit court's order also enjoined the defendants from using the certified ballot language at the November 1992 general election and directed the defendant Secretary of State to certify new ballot language. In his statements from the bench, the circuit judge specified that the Secretary should follow the order in which the elements appeared in the legislative title and should articulate the exceptions to the parental notification provision. That day, the defendants noted an appeal to the Court of Special Appeals as well as an appeal to this Court. They also filed a petition for a writ of certiorari which we granted.[2] As indicated at the beginning of this opinion, in an order dated August 19, 1992, we reversed the declaratory judgment and injunctive orders of the Circuit Court for Anne Arundel County and directed the circuit court to enter a new declaratory judgment upholding the validity of the ballot title.[3]

The standards to be applied to this case are clearly set forth in the Constitution and statutes. The Secretary of State,

---

2. The defendants took a direct appeal to this Court based upon the provisions of Maryland Code (1957, 1990 Repl.Vol.), Art. 33, §§ 19-1 through 19-5. These sections establish a statutory procedure governing certain cases relating to elections, and include a provision for an appeal to be directly taken to the Court of Appeals. § 19-4(3)(i). The defendants, unsure of whether the case was subject to direct appeal under these provisions, also filed a notice of appeal to the Court of Special Appeals and a certiorari petition in this Court, requesting that this Court assert jurisdiction in accordance with Code (1974, 1989 Repl. Vol.), §§ 12-201 through 12-203 of the Courts and Judicial Proceedings Article. Because the defendants proceeded in a timely fashion under both procedures, and because we have jurisdiction under one or the other procedure, we need not decide which route was appropriate.

3. We note that the referred measure was approved by the voters in the November 1992 general election.

when drafting a ballot title which is "a condensed statement in understandable language" of the referred measure, Art. 33, § 16–6, is required "to present the purpose of said measure concisely and intelligently," Art. XVI, § 5(b). This Court in several cases has reviewed the applicable standards. *See Surratt v. Prince George's County,* 320 Md. 439, 578 A.2d 745 (1990); *Anne Arundel County v. McDonough, supra,* 277 Md. 271, 354 A.2d 788; *Morris v. Governor,* 263 Md. 20, 281 A.2d 216 (1971); *Lexington Park v. Robidoux,* 218 Md. 195, 146 A.2d 184 (1958); *Carr v. Hyattsville,* 115 Md. 545, 81 A. 8 (1911). In *Anne Arundel County v. McDonough, supra,* 277 Md. at 296, 354 A.2d at 802–803, we stated:

> "Where ... the ballot question used is not the legislative title but a brief summary of the contents or purpose of the proposed act, the standard by which the question's validity will be judged, as with a legislative title, is whether the question posed, accurately and in a non-misleading manner, apprises the voters of the true nature of the legislation upon which they are voting."

The Secretary of State must certify language with the "clarity and objectivity required to permit an average voter, in a meaningful manner, to exercise an intelligent choice." *McDonough,* 277 Md. at 300, 354 A.2d at 805.

The plaintiffs rely on both *Surratt v. Prince George's County, supra,* and *Anne Arundel County v. McDonough, supra.* In each case, this Court struck down ballot title language on the ground that it was misleading. Each case is readily distinguishable.

In *Surratt v. Prince George's County, supra,* the ballot question presented to the voters of Prince George's County was whether they approved of a Charter amendment which would "provide that in all pending and future claims the County will only waive its immunity in those instances where its officers and employees are liable." 320 Md. at 448, 578 A.2d at 749. The Charter of Prince George's County, however, already provided that the County had waived its immunity "in actions sounding in tort for which its officers, agents and

employees may be liable." *Ibid.* The real purpose of the charter amendment was "to effect a total repeal of the waiver of governmental immunity" in the event the Court of Appeals held invalid the County's attempt to limit its waiver to cases in which a county officer did not possess public official or any other sort of individual immunity, *Surratt v. Prince George's County, supra,* 320 Md. at 448, 444, 578 A.2d at 749, 747. *Cf., Prince George's County v. Fitzhugh,* 308 Md. 384, 519 A.2d 1285 (1987). In holding that the provision of the County charter was invalidly adopted, we stated that the ballot title *"was* misleading, and it *was* calculated to suggest to the voter that the charter amendment would have virtually no effect— and certainly not the repeal of the waiver of immunity." *Surratt,* 320 Md. at 449, 578 A.2d at 750.

The ballot title language at issue in this case does not attempt to deceive the voters about the true nature of the bill. The ballot language clearly sets forth the primary purpose of the legislation, namely to prohibit State interference with a woman's right to terminate a pregnancy in most instances. It then summarizes in "understandable language" and with "reasonable clarity" the "actual scope and effect of the measure." *Surratt,* 320 Md. at 447, 578 A.2d at 749.

Similarly, our decision to strike down the results of a referendum in *Anne Arundel County v. McDonough, supra,* does not support the plaintiffs' argument with respect to the ballot language at issue in this case. In *McDonough,* the voters of Anne Arundel County were presented with Question D which asked them to vote for or against a referendum

"[t]o rezone certain parcels of land in the median strip, the west side of the southbound lane and the east side of the northbound lane of Route 3; and to rezone one parcel of land on the west side of Brockridge Road near Ellen Street; all parcels of which are in the Fourth Assessment District and which were rezoned by virtue of amendments to Bill No. 59–73." 277 Md. at 278, 354 A.2d at 792–793.

The "rezoning" sought to be accomplished by the referred measure, which was actually forty-one different amendments

to a comprehensive county rezoning, was not disclosed by the ballot title language. Although the County Board of Elections had certified that the voters should vote "for the amendments to the bill" or "against the amendments to the bill," the ballot question was followed only by two words "for" or "against." *McDonough*, 277 Md. at 278, 354 A.2d at 792–793. Consequently, the voters were asked to vote for or against the rezoning rather than for or against the amendments to the rezoning. Added to this confusion was the fact that the amendments would have accomplished numerous changes, none of which were even alluded to in the ballot language. Given this combination we concluded that the ballot language "did not present a clear, unambiguous and understandable statement of the full and complete nature of the issues." *McDonough*, 277 Md. at 300, 354 A.2d at 805.

The ballot language certified by the Secretary of State in this case is not obtuse and clearly conveys the purpose of the referred measure. The language does not on its face generate any confusion about whether the entire bill enacted by the General Assembly or some portion thereof was petitioned to referendum. Within the constraints of a 100 word summary it gives considerable detail about the nature of the issues addressed by the measure. It is neither deceptive, as was the case in *Surratt v. Prince George's County, supra,* nor vague as was the case in *Anne Arundel County v. McDonough, supra.*

 It should be emphasized that judicial review of the ballot title is limited to discerning whether the language certified "convey[s] with reasonable clarity the actual scope and effect of the measure." *Surratt v. Prince George's County, supra,* 320 Md. at 447, 578 A.2d at 749. We are not concerned with the question of whether this Court, the trial court, or any of the numerous advocates on either side of this issue, are capable of drafting better ballot language. *See Matter of Proposed Constitutional Amendment Under the Designation "Pregnancy,"* 757 P.2d 132, 137 (Colo.1988) ("[I]t is not the function of this court to rephrase the language of the summary and title to achieve the best possible statement of the intent of the amendment. If the chosen language fairly

summarizes the intent and the meaning of the proposed amendment, without arguing for or against its adoption, it is sufficient.")

■ Turning to the plaintiffs' three specific complaints about the ballot language, we find utterly no merit in the plaintiffs' first argument that the ballot language must follow the order of the legislative title. Nothing in the Constitution, the statutes, or our prior cases suggests that the ballot language need be in any particular order. Rather, it is the substantive meaning of the language and the ability of the average voter to understand the referred measure that is at issue. The legislative title often reflects the order of items presented in the bill. These items are not necessarily in the order of importance but more frequently follow the alphabetical or numerical order of the code provisions which they amend. A holding that this order is somehow mandatory could give rise to ballot language which minimizes the importance of the principal part of a referred measure because that part appears either in the middle or at the end of the legislative title.

The Secretary of State summarized new § 20–209 of the Health–General Article, enacted by Ch. 1 of the Acts of 1991, at the beginning of the ballot title. The initial language of the ballot title read as follows: "Revises Maryland's abortion law to prohibit state interference with woman's abortion decision before fetus is viable, or, under certain conditions, at any time." [4] The decision of the Secretary of State to set out first

---

4. Code (1982, 1990 Repl.Vol., 1992 Cum.Supp.), § 20–209(b) of the Health–General Article provides:

"State intervention—Except as otherwise provided in this subtitle, the State may not interfere with the decision of a woman to terminate a pregnancy:

 (1) Before the fetus is viable; or

 (2) At any time during the woman's pregnancy, if:

 (i) the termination procedure is necessary to protect the life or health of the woman; or

 (ii) The fetus is affected by genetic defect or serious deformity or abnormality."

the main objective of the referred measure does not in any way render the ballot language misleading.

■ The plaintiffs' second argument involves the summary of the parental notification provision in the ballot title. The plaintiffs argue that the ballot language emphasizes a pre-existing statutory requirement and fails to explain the new exceptions to that requirement. The parental notification summary, accounting for twenty-two of the one hundred words in the ballot title, reads, "and to provide certain exceptions to the requirement that a physician notify an unmarried minor's parent or guardian prior to minor's abortion."

The plaintiffs' contention that the ballot language emphasizes a *pre-existing* requirement is not entirely accurate. The Attorney General in 1985 opined that, in light of Supreme Court decisions following the opinion in *Roe v. Wade, supra,* the Maryland parental notification statute was unconstitutional. 70 Att'y Gen.Ops. 3 (1985).[5] Thus, regardless of whether the Attorney General's opinion was correct or not, the General Assembly believed that it was necessary to provide a new parental notification requirement in the amended abortion statutes. By enacting a parental notification requirement, the legislature imposed an obligation, which has not been questioned by the Attorney General, upon physicians to notify a minor's parents prior to performing an abortion. That obligation probably did not preexist, and therefore the Secretary of State was not misleading voters by saying that the referred measure involved a parental notification requirement.

Moreover, the legislative title relating to the parental notification matter contained fifty-one words as follows: "authorizing a physician to perform an abortion on an unmarried minor without notice to a parent or guardian of the minor if, in the professional judgment of the physician, the minor is mature and capable of giving informed consent or notice would not be in the best interests of the minor." The entire legislative title,

---

**5.** This conclusion was reaffirmed by the Attorney General on August 30, 1990. *See* 75 Att'y Gen.Ops. —— (Op. No. 90–041) (1990).

however, exceeded three hundred words. The Secretary of State was constrained by a maximum 100 words and, therefore, was not able to enumerate every detail of every portion of the legislation. The language used by the Secretary of State accurately informed the voters of the proposed change in the law because it stated that the referred measure creates certain exceptions to the general requirement of parental notification. The enumeration of these exceptions may have required the Secretary to eliminate or shorten a summary of another item also being changed by the referred measure. The plaintiffs, or perhaps another group, may then have claimed that the shortened or eliminated provisions rendered the ballot title misleading. By indicating that the legislation establishes exceptions to the parental notification provision, the ballot language "concisely and intelligently" summarized that portion of the legislation.

■ The plaintiffs third argument involved the ballot language relating to abortion referral. The pertinent ballot language stated as follows: "repeals some, and clarifies other, provisions related to abortion referral." The language in the legislative title describing this section states: "repealing certain provisions of law related to abortion referral services; clarifying a provision of law related to referral services." According to the Constitution and the Election Code, the legislative title is "sufficient." Art. XVI, § 5(b); Art. 33, § 16–6. With respect to these provisions, the legislative title provides no greater specificity than the ballot title. Moreover, the summary, given the stringent wording constraints, adequately advises voters that changes were being made by the referred measure to the law governing abortion referral services. This portion of the title was not misleading.

In conclusion, we hold that the ballot title certified by the Secretary of State complied with the requirements of the Constitution and the Election Code.