REQUESTED BY: John A. Gale
Nebraska Secretary of State
On May 30, 2007, the 100th Nebraska Legislature, First Session, passed LR 1CA by a four-fifths majority. LR 1CA proposed an amendment to the Nebraska Constitution which would raise the salaries of members of the Legislature to twenty-two thousand dollars per year, and it also called for that constitutional amendment to be presented to the electors of the state at a special election to be held in conjunction with the statewide primary election in 2010. Similarly, the 100th Nebraska Legislature, Second Session, passed LR 5CA by a four-fifths majority on February 1, 2008. LR 5CA proposed an amendment to the Nebraska Constitution which would allow the Legislature to authorize governmental subdivisions in Nebraska to own and finance real and personal property to be used by nonprofit enterprises through the issuance of revenue bonds. LR 5CA was also to be submitted to the electors of Nebraska "[a]t the primary election in May 2010." *Page 2 
On January 11, 2010, Michael J. Flood, Speaker of the Nebraska Legislature, wrote to you and indicated that members of the Legislature "feel that a pay increase for state senators, while important to our institution, is not appropriate at this time" because of the "difficult financial times" and the fact that Nebraska families are "struggling to make ends meet." Speaker Flood then indicated that, based upon a previous opinion of this office and the Legislature's own research, the Legislature's practice of directing that a proposed constitutional amendment be placed on a ballot in the future instead of at the next election might be "constitutionally flawed." As a result, Speaker Flood requested that you seek our opinion "to determine the effect of the delayed submission." He also stated, "[w]e believe that a delayed submission date is constitutionally suspect and as such, LR 1 CA should not appear on the 2010 Primary Election Ballot."
Speaker Flood's correspondence caused you to review our opinion set out at 1969-70 Rep. Att'y Gen. 102 (Opinion No. 67, dated August 8, 1969). Your reading of that opinion suggested that "a special election [for a proposed constitutional amendment] requested by the Legislature should occur sometime prior to the next regular General Election to accommodate the `unusual importance or urgency' of the proposed measure." On that basis, you asked us if the scheduling of elections for LR 1CA and LR 5CA was improper so that those measures should not be placed on the 2010 Primary Election ballot. For the reasons discussed at length below, we believe that neither of those proposed constitutional amendments should be placed on the ballot for the 2010 Primary Election in Nebraska.
Before we turn to an analysis of the question you posed to us, we will briefly discuss the Legislature's role in submitting constitutional amendments to the people for their approval. Under art. XVI, § 1 of the Nebraska Constitution, the Legislature may propose amendments to the constitution for submission to the electors of Nebraska. When such a proposal for amendment to a state constitution is submitted, a legislature is not exercising its legislative power, but is acting under a limited power conferred by the people, i.e., submission of a proposed constitutional amendment to the people is not a legislative act.Morris v. Governor of Maryland,263 Md. 20, 281 A.2d 216 (1971); Bourbon v. Governor ofMaryland, 258 Md. 252, 265 A.2d 477 (1970); Hutcheson v.Gonzales, 41 N.M. 474, 71 P.2d 140 (1937); Weston v. Ryan,70 Neb. 211, 97 N.W. 347 (1903); In re Senate File 31,25 Neb. 864, 41 N.W. 981 (1889); 16 Am. Jur.2d ConstitutionalLaw § 26 (2008). As a result, the power of the legislature to initiate changes in a state constitution is a delegated power rather than a plenary one, and it must be strictly construed. State ofAlabama v. Manley, 441 So.2d. 864 (Ala. 1983); Bourbon v.Governor of Maryland, 258 Md. 252, 265 A.2d 477 (1970);Leach v. Brown, 167 Ohio St. 1, 145 N.E.2d 525 (1957); 16 Am. Jur.2d Constitutional Law § 26 (2008). In proposing a constitutional amendment, a legislature acts in the character and capacity of a constitutional convention and not in the exercise of its normal legislative *Page 3 
authority. Chaney v. Bryant;259 Ark. 294, 532 S.W.2d 741 (1976). The adoption of a proposed constitutional amendment by the Legislature does not amend the constitution; it is a mere proposal which possesses no validity until ratified by a majority vote of the people. Cunningham v.Exon, 207 Neb. 513, 300 N.W.2d 6 (1980); In re Senate File31, 25 Neb. 864, 41 N.W. 981 (1889).
Art. XVI, § 1, the constitutional provision at issue in this instance, provides, as is pertinent:
 The Legislature may propose amendments to this Constitution. If the same be agreed to by three-fifths of the members elected to the Legislature, such proposed amendments shall be entered on the journal, with yeas and nays, and published once each week for three consecutive weeks, in at least one newspaper in each county, where a newspaper is published, immediately preceding the next election of members of the Legislature or a special election called by the vote of four-fifths of the members elected to the Legislature for the purpose of submitting such proposed amendments to the electors, At such election said amendments shall be submitted to the electors for approval or rejection upon a ballot separate from that upon which the names of candidates appear.
The plain language of art. XVI, § 1 suggests that three-fifths of the members of the Legislature can propose a constitutional amendment which will be presented to the people at the next election of members of the Legislature (the next General Election), or at a special election called for that purpose, when four-fifths of the members of the Legislature vote for the special election process. It also seems to us that the language of that constitutional provision suggests some immediacy or urgency in connection with its special election provisions, based upon the four-fifths, super-majority requirement.
In determining the meaning of constitutional language, effect must be given to the intent of the framers of the organic law and of the people who adopted it. In re Applications A-16027,243 Neb. 419, 499 N.W.2d 548 (1993). it is permissible to consider the facts of history and "historical or operative facts" in determining the meaning of language of the Constitution, including the historical and operative facts in connection with its adoption.Pig Pro Nonstock Cooperative v. Moore,253 Neb. 72, 568 N.W.2d 217 (1997); Omaha National Bank v.Spire, 223 Neb. 209, 389 N.W.2d 269 (1986).
 It is also appropriate and helpful to consider, in connection with the historical background, the evil and mischief attempted to be remedied, the objects sought to be accomplished, and scope of the remedy its terms imply. *Page 4 
State ex rel. Spire v. Beermann,235 Neb. 384, 390, 455 N.W.2d 749, 752 (1990) (quoting StateRailway Commission v. Ramsey,151 Neb. 333, 340-41, 37 N.W.2d 502, 507 (1949)). Accordingly, we have reviewed the historical facts and background pertaining to the special election language in art. XVI, § 1 in order to ascertain its meaning.
The provisions in art. XVI, § 1 which allow the Legislature to present a constitutional amendment to the electors at a special election if four-fifths of the members of that body vote to do so were placed in the Nebraska Constitution in 1968 as a result of 1967 Neb. Laws LB 217, LB 217 was introduced by state Senator Terry Carpenter, and portions of the legislative history of that bill offer some sense of the objects he sought to accomplish with the proposed constitutional change.
During the public hearing on LB 217, Senator Carpenter introduced the bill, and made the following comments:
 We'll take up LB 217. . . . The amendment I have, (See Exhibit J) after I gave some consideration and thought to the matter goes further than that, in that it says that by three-fourths vote of the Legislature like any other Constitutional amendment the Legislature by that vote can call a special election to amend the Constitution. . . . So at least consider this amendment, to at least getting it out on the floor, in order to see in the judgment of the majority of the Legislature itself for the committee to feel this might be desirable and necessary. Otherwise there is no way in the world between general elections irrespective of the situation that this Legislature either in regular session or special session can submit an amendment to the Constitution, any sooner than every two years. It may be that the three-fifths might be too lacking — I don't care what the number is — I am only trying to visualize if and when this circumstance does arise, maybe it never will arise, but if it does we will not have the ability to do this. It is well . . . Submitting a question like this which can be decided within the area of three or four months.
Committee Records on LB 217, 77th Neb. Leg., 12-13 (February 10, 1967) (emphasis added). Subsequently, during floor debate on the bill, Senator Carpenter offered the following:
 Now, what is the purpose of this bill? This legislature today is going through a great deal of mental anguish. . . . we are now confronted in an area in which I am sure none of us really knows what to do. I can foresee by the imaginative mind that I have in the future that this stage (sic) could be confronted with a problem in which we would not be willing *Page 5 
to act until we got further advice and consent from the people of this state. . . . As the constitution now says, we cannot amend the constitution except at a general election, which means that every two years. What this bill says and the intent and the expects from it is this, that if a condition arises in which 4/5 of us want too (sic), based upon the number of 40 if none exists, can then submit by special election of the people of this state for further guidance or to amend and constitute the point which at that particular time we feel is not broad enough in order for us to take care of the emergency as might exist. I realize that this is only, so to speak, a law in inventory, so to speak. I realize that it may never exist and I hope that it doesn't. But, if it does you want to tie our hands for two years in order to muddle through and to go through in a state of anguish to a point that we can't do anything until the next general election and I think this bill has extreme importance. . . .
Floor Debate on LB 217, 77th Neb. Leg., 581 (February 24, 1967) (Statement of Sen. Carpenter) (emphasis added). Senator Carpenter also stated:
 On this amendment [LB 217], because of the emergency nature of it, to be used on line 15, we say called by 4/5 of the Legislature. So the 4/5 notes only apply in the event that this Legislature — some Legislature would call a special session for the purposes of the bill.
Floor Debate on LB 217, 77th Neb. Leg., 622 (February 27, 1967) (Statement of Sen. Carpenter) (emphasis added). Finally, the following exchange occurred between Sen. Gerdes and Sen. Carpenter regarding LB 217 during floor debate on February 27, 1967:
 Senator Gerdes: I would like to ask Senator Carpenter a question. As I understand it, and maybe I do not. If we had decided to have a special election, something came up so important, that we have to have a special election, then we would have to have a 4/5 vote of the Legislature to put this before the people.
 Senator Carpenter: That is correct.
Floor Debate on LB 217, 77th Neb. Leg., 624 (February 27, 1967) (emphasis added).
From the legislative history discussed above, it is apparent that Senator Carpenter introduced LB 217 to deal with the fact that there was no way under the Nebraska Constitution as it existed in 1967 for the Legislature to quickly submit an amendment to the Nebraska Constitution to the people because, at that time, any amendment proposed by the Legislature could not be voted on until the next General *Page 6 
Election. Moreover, LB 217 was designed to allow quick amendment of the Nebraska Constitution in situations where the circumstances involved important and urgent issues which required emergency action.
The opinion of this office which you and Speaker Flood cited is consistent with those conclusions. In 1969-70 Rep. Att'y Gen. 102 (Opinion No. 67, dated August 8, 1969), we considered whether the Legislature was permitted, under art. XVI, § 1, to determine which of several constitutional amendments proposed by the Legislature could be submitted at a particular special election. In the course of that opinion, which was written in 1969 shortly after LB 217 was submitted to the voters, we stated:
 The amendment of 1968 [LB 217] permitted the Legislature to call a special election for the submission of proposed constitutional amendments, where before, such could be submitted only at general elections. . . . .
 * * * The amendment of 1968, as we have noted, permits the calling of a special election at the discretion of the Legislature. The requirement of a four-fifths majority for the calling thereof suggests a constitutional anticipation that special elections should be held only for proposed amendments of unusual importance or urgency. It would inconsistent with this concept to require the submission of relatively minor proposed amendments merely because a special election had been called for a truly significant measure.
 * * * On the basis of our analysis of Article XVI, Section 1, Constitution of Nebraska, it is our opinion that the Legislature may, by a four-fifths vote, call a special election and may provide which proposed constitutional amendments shall be submitted thereat. All such proposed amendments which are not specifically designated to be submitted at the special election shall be submitted at the next succeeding election of members of the Legislature.
1969-70 Rep. Att'y Gen. 102, 103-104 (Opinion No. 67, dated August 8, 1969),
The historical background of LB 217 discussed above indicates that the evil or mischief which LB 217 was designed to remedy was the fact that there was no way for the Legislature to quickly submit a proposed constitutional amendment to the electors in *Page 7 
Nebraska when urgent or important situations required that action. The object of the bill was to create such a process using special elections, to be initiated when a four-fifths majority of the Legislature determined it was necessary. With those conclusions in mind, we will again consider the language of art XVI, § 1.
It is our view that the language of art. XVI, § 1 implicitly means that, in important or urgent situations, a four-fifths majority of the Legislature may submit a constitutional amendment to the electors of Nebraska more quickly than under the usual circumstances. Therefore, since the Legislature acts under a limited, delegated authority when it proposes constitutional amendments, and that authority must be strictly construed, we believe that art. XI, § 1 authorizes four-fifths of the members of the Legislature to submit a constitutional amendment to the people at a special electionbefore the next General Election. We do not believe that it authorizes the Legislature to submit such an amendment to the people in the future, after the next General Election.[1] On that basis, we conclude that LR 1CA and LR 5CA are beyond the constitutional authority of the Legislature, and absent such authority, should not be placed on the ballot for the 2010 General Election.
Sincerely,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved:
 ___________________________ Attorney General
[1] We note that our conclusion regarding the Legislature's authority to submit constitutional amendments at special elections beyond the next General Election is consistent with the notion that one legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation.State ex rel. Stenberg v. Moore,249 Neb. 589, 544 N.W.2d 344 (1996). *Page 1