## No. 27243

**The City of Glendale, a municipal corporation; George T. Garson, individually and as Mayor of the City of Glendale; Ralph Chambers, Joseph Kaiser, Tim Greer, John Johnson, Robert Gilmour, individually and as City Councilmen of the City of Glendale; and Frank P. MacFadden v. Mary Estill Buchanan, Secretary of State, State of Colorado, John P. Moore, Attorney General, State of Colorado, Irving Mehler, Reporter to the Supreme Court of the State of Colorado; Board of County Commissioners of the County of Arapahoe; City and County of Denver; Cherry Creek School District No. 5; City and County of Denver v. Mary Estill Buchanan, Secretary of State, State of Colorado; John P. Moore, Attorney General, State of Colorado; Irving Mehler, Reporter to the Supreme Court of the State of Colorado; The Board of County Commissioners of the Counties of Adams, Jefferson, Arapahoe, Douglas, Weld, Boulder, Gilpin, and Clear Creek, all the Board of County Commissioners of all other Colorado Counties, as a class; and the Cities of Aurora and Lakewood**

(578 P.2d 221)

Decided April 24, 1978.                    Rehearing denied May 8, 1978.

Douglas G. McKinnon, City Attorney, Paul Puckett, for plaintiffs-appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Mary J. Mullarkey, Assistant, for State defendants-appellees and State third-party defendants-appellees.

Tom L. Eitel, for Intervenor-Appellee Cherry Creek School District No. 5.

Ronald S. Loser, County Attorney, for defendant and third-party defendant-appellee Board of County Commissioners of the County of Arapahoe.

Max P. Zall, City Attorney, Herman J. Atencio, Assistant, David J. Hahn, Special Counsel, for defendant and third-party plaintiff-appellant City and County of Denver.

Patrick Mahan, County Attorney, Richard J. Scheurer, Assistant, George J. Robinson, Special Counsel, for third-party defendant-appellee County of Jefferson.

S. Morris Lubow, County Attorney, Larry W. Berkowitz, Assistant, Michael F. Swanson, Assistant, for third-party defendant-appellee Board of County Commissioners of Adams County.

Thomas O. David, County Attorney, Sam Telep, County Attorney, for third-party defendant-appellee County of Weld.

William W. McNeill, County Attorney, for third-party defendant-appellee County of Clear Creek.

Raymond C. Johnson, City Attorney, for third-party defendant-appellee City of Lakewood.

Joseph C. French, County Attorney for third-party defendant-appellee County of Boulder.

Leland Coulter, City Attorney for third-party defendant-appellee City of Aurora.

Earl L. Dazey, County Attorney for third-party defendant-appellee County of Douglas.

John M. Yeager, County Attorney for third-party defendant-appellee County of Gilpin.

Norman A. Palermo, County Attorney for third-party defendant-appellee County of El Paso.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

An action was brought in the trial court seeking a declaratory judgment that constitutional Amendment No. 1, commonly known as the Poundstone Amendment, adopted by the electorate at the 1974 general election, is void. The trial court held that the amendment is valid and we affirm.

Amendment No. 1 was an initiated proposal to amend Article XIV, Section 3 and Article XX, Section 1 of the Constitution of the State of Colorado. Article XIV, Section 3 provided that no territory of a county may be annexed to a neighboring county without the approval of the voters of the county in which the affected territory is located. Amendment No. 1 amended this section by adding the words "Except as otherwise provided by the statute," thus allowing the general assembly to enact legislation which would eliminate the previously required vote of the affected county. The main purpose of Amendment No. 1 was to change Article XX, Section 1 by providing that Article XIV, Section 3 and the annexation and consolidation statutes applicable to counties would also apply to the City and County of Denver.

The petition to initiate this proposed Amendment No. 1 was filed with the Secretary of State on July 6, 1973. As provided by section 1-40-101, C.R.S. 1973, a board consisting of the Secretary of State, the Attorney General and the Reporter of the Supreme Court approved the following ballot title for the proposed amendment: "An act to amend Articles XIV and XX of the Constitution of the State of Colorado concerning the annexation of property by a county or city and county, and prohibiting the striking off of any territory from a county without first submitting the

question to a vote of the qualified electors of the county and without an affirmative vote of the majority of those electors."

Section 1-40-101(1), C.R.S. 1973,[1] requires the board to devise a ballot title "which shall correctly and fairly express the true intent and meaning of the law or constitutional amendment." The title was returned to the proponents and the full text of the proposal was published pursuant to the requirements of Article XXIII of the Colorado Constitution and section 1-4-103, 1973. No one challenged the ballot title prior to the election. At the general election on November 5, 1974, Amendment No. 1 received 409,174 "yes" votes and 292,040 "no" votes.

This suit arose when the City of Glendale filed an action against the City and County of Denver and the board which fixed the ballot title, seeking a declaratory judgment that Glendale was not automatically annexed by the passage of Amendment No. 1. In the alternative, Glendale sought to invalidate Amendment No. 1 due to its allegedly misleading ballot title. According to Glendale, the ballot title implied that the amendment would require the approval of the voters in a county whose territory is to be annexed, although the effect of the amendment is actually the opposite, and allows the general assembly to circumvent the voter approval requirement.

Denver raised the affirmative defense that Amendment No. 1 was irreconcilable with Amendment No. 5, which had been passed at the same general election, and that both amendments were void. Amendment No. 5 altered Article XX, Section 1 to require the approval of a boundary control commission before any annexation or consolidation proceeding could be initiated. Cherry Creek School District No. 5 and Arapahoe County intervened and defended the validity of Amendment No. 1.

On March 3, 1975, the trial court entered an order ruling that the passage of Amendment No. 1 did not cause the annexation to Denver of Glendale or any other enclave. It also indicated that the ballot title for Amendment No. 1 was misleading, but that disposition of the issue of the amendment's validity would await joinder of other interested counties or cities.

Denver's answer was then designated a third-party complaint. After various other counties and cities had responded as third-party defendants, the trial court ordered that all proper parties were before the trial court and that "[t]he remaining issue is whether said title is so misleading that it affects the validity of Amendment one, *i.e.,* whether Amendment one is valid, partially valid and partially void, or all void." After receiving briefs on this question, the trial court ruled that Amendment No. 1 was valid for the following reasons: available statutory and equitable pre-election

---

[1] Now section 1-40-101(2), C.R.S. 1973 (1976 Supp.).

remedies had not been pursued; the opponents of Amendment No. 1 failed to show beyond a reasonable doubt that the title had misled voters; to invalidate the amendment would do violence to the power of initiative; and Amendment No. 1 and Amendment No. 5 were not in conflict. Denver appealed the judgment to this court.

Denver places emphasis on the argument that the ballot title was misleading. However, the real issue is whether Denver failed, as the trial court ruled, to carry its burden of showing that enough voters were actually misled to warrant invalidating an initiated measure which received the approval of the electors of the state. The absence of any challenge to the ballot title before the election further weakens the position of the opponents of Amendment No. 1.

I.

As we observed in *Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972) (hereafter referred to as *Common Cause II),* the political power of this state is vested in the people. In Article V, Section 1 of the constitution, the people have reserved to themselves the right of initiative "independent of the legislature." The initiative power is expressly stated to be self-executing, and the power of initiative is to be liberally construed to allow the greatest possible exercise of this valuable right. *E.g., Billings v. Buchanan,* 192 Colo. 32, 555 P.2d 176 (1976). *See also* section 1-40-111, C.R.S. 1973. Acts of the legislature which affect the exercise of the initiative must further the purpose of the right or facilitate its operation; if they do not, the legislative acts are invalid. *In re Interrogatories Propounded by the Senate Concerning House Bill 1078,* 189 Colo. 1, 536 P.2d 308 (1975); *Common Cause v. Anderson,* 177 Colo. 402, 495 P.2d 218 (1972) (hereafter referred to as *Common Cause I); Common Cause II, supra; Yenter v. Baker,* 126 Colo. 232, 248 P.2d 311 (1952). Similarly, legislative acts which prescribe the procedure to be used in voting on initiatives may not restrict the free exercise of the right. *See In re Interrogatories Concerning House Bill 1078, supra.* With this background, we examine the issue of the validity of Amendment No. 1.

Every reasonable presumption is to be indulged in favor of a constitutional amendment which the people have adopted at a general election. *People ex rel. Elder v. Sours,* 31 Colo. 369, 74 P. 167 (1903); *Chaney v. Bryant,* 259 Ark. 294, 532 S.W. 2d 741 (1976). Here, there was no proof or any offer of proof that many voters were actually misled. *See Boucher v. Bomhoff,* 495 P.2d 77 (Alaska 1972) (election invalidated where challengers presented expert testimony that misleading title introduced a significant bias into the election); *Hill v. Evans,* 414 S.W. 2d 684 (Tex. Civ. App. 1967). The record contains an affidavit signed by only one voter who swore he mistakenly voted for Amendment No. 1 because he was misled by its ballot title. This is far short of the evidence

required before this amendment could be voided. Here, Amendment No. 1 was approved by a margin of more than 117,000 votes. *People ex rel. Elder v. Sours, supra; Jardan v. Meadowbrook-Fairview Metropolitan District,* 190 Colo. 528, 549 P.2d 762 (1976); *De Moulin v. Denver,* 177 Colo. 129, 495 P.2d 203 (1972); *Suttle v. Sullivan,* 131 Colo. 519, 283 P.2d 636 (1955).

■ Unless convinced that voters have been misled, a reviewing court must assume that the voters cast informed ballots. *See Young v. Byrne,* 144 N.J. Super. 10, 364 A.2d 47 (1976); *Morris v. Governor of Maryland,* 263 Md. 20, 281 A.2d 216 (1971). Where an initiated amendment is at issue, this presumption is even more vital. To presume otherwise would unduly interfere with the exercise of the initiative by substituting for the results of an election, the court's speculation about how voters might have voted had the ballot title more correctly indicated the provisions of the amendment.

■ The presumption that voters cast informed ballots is strengthened in this case by the fact, which was noted by the trial court, that widespread publicity was given to Amendment No. 1 on radio and television and in the newspapers of the state. *See People ex rel. Elder v. Sours, supra* (Gabbert, J., concurring opinion); *Morris v. Governor of Maryland, supra; Hill v. Evans, supra.* Further, the constitutional publication requirements, which were complied with here, are intended to inform the electorate about the effect and content of proposed amendments. *See People ex rel. Elder v. Sours, supra; Cook v. Baker,* 121 Colo. 187, 214 P.2d 787 (1950); *Sears v. State,* 232 Ga. 547, 208 S.E. 2d 93 (1974).

The City and County of Denver relies on *Hoper v. Denver,* 173 Colo. 390, 479 P.2d 967 (1971) as authority for invalidating Amendment No. 1. In *Hoper,* the issue involved certain ballot title requirements of the charter of the City and County of Denver. There, this court voided a charter amendment after it was adopted by an affirmative vote of the electorate because the ballot title failed to reflect the effect the proposal would have if passed. Under the situation in *Hoper v. Denver, supra,* on this issue, we regard it as still the law as it relates to the requirements of the charter of the City and County of Denver; however, we find it unpersuasive precedent for invalidating an amendment to our state constitution.

The burden for invalidating this amendment is heavy because the general assembly has provided procedures for challenging the ballot title prior to elections. Sections 1-40-101 and 102, C.R.S. 1973 (now as amended in 1976 Supp.).[2] Despite the widespread publicity received by

---

[2] In *In re Interrogatories Concerning House Bill 1078, supra,* we indicated that subsection (3) of section 1-40-102, C.R.S. 1973, retains its vitality although subsections (1) and (2) were declared unconstitutional in *Common Cause I, supra.*

Amendment No. 1 before the election, no attempt was made to use these procedures. To invalidate the amendment after the election would be costly and disruptive, and cannot be justified unless good cause is shown why no challenge was made before the election. No such explanations have been offered here. *Cf. Allen v. Glynn,* 17 Colo. 338 at 346, 29 P. 670 (1892) (incorrect designation of candidate's party could have been objected to and corrected prior to election, and a challenge after the election was disregarded.)

■ To the extent that section III of *Hoper v. Denver, supra,* is inconsistent with this requirement of prior challenge, it is disapproved. In *Hoper,* this court seemed to imply that a challenge to the validity of an amendment which first occurs after its enactment and which is based on irregularities of the ballot title, is permissible if the amendment has not yet been implemented.

The challenged amendments in *Hoper* had the effect of making elections for public office in the City and County of Denver partisan. The case held that the failure to challenge the title before the election was not fatal to the claim of invalidity where the challenge occurred before the first city election at which the amendment would have been applied. We believe that the expense and inconvenience of holding an election on a proposal is sufficiently burdensome to justify requiring that objections to ballot titles be made before the election — unless, of course, the challengers can prove that so many voters were actually misled that the result of the election might have been different.

We also note, that even if the statutory remedy had been unavailable due to lapse of time, the statutory procedure is not exclusive. The ballot title could have been challenged in court before the election.[3] *Bauch v. Anderson,* 178 Colo. 308, 497 P.2d 698 (1972); *Henry v. Baker,* 143 Colo. 461, 354 P.2d 490 (1960); *Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958). *Cf. Brownlow v. Wunch,* 102 Colo. 447, 80 P.2d 444 (1938); *Elkins v. Milliken,* 80 Colo. 135, 249 P. 655 (1926) (both cases held that statutory procedure for challenging initiative petitions was not expressly an exclusive remedy and therefore did not deprive court of jurisdiction in suit to enjoin placing measure on ballot).

## II.

■ There has been some confusion about the issue of whether Amendment No. 1 and Amendment No. 5 are inconsistent. Some of the parties claimed that this issue had been removed and the trial court did not include it in its statement of the issues to be decided. However, the

---

[3] This right to resort to the courts is particularly important in light of our holding in *In re Interrogatories Concerning House Bill 1078, supra,* that the failure to publicize a ballot title before the time allowed for challenges under the statutory procedures has expired is not a reason to invalidate the election at which the ballot title is used.

parties briefed this issue, the trial court ruled on it, and we will address it.

The trial court correctly held that the two amendments are consistent. In *In re Interrogatories Propounded by the Senate Concerning House Bill 1078, supra,* we stated:

"The test for the existence of a conflict is: Does one authorize what the other forbids or forbid what the other authorizes?"

Amendment No. 5 provides that before annexation or consolidation proceedings may begin, a boundary control commission must approve the proposed annexation. Amendment No. 1 provides that the legislature may alter the requirement that voters of a county whose territory is to be annexed must approve of the annexation and provides that Article XIV, Section 3 and the general annexation laws apply to the City and County of Denver. Amendment No. 1 does not forbid the condition precedent to annexation proceedings which Amendment No. 5 enacted, nor does Amendment No. 5 require that the general annexation laws be ignored. We agree that these amendments may coexist harmoniously, and thus are not void on the theory that they are inconsistent.

The judgment of the trial court is affirmed.

MR. JUSTICE CARRIGAN does not participate.