James F. **KNAPPENBERGER** and Edwin Z. Brown, Plaintiffs–Appellees,

v.

Kathleen **SHEA**, a/k/a Kathleen Shea Clapp, Defendant–Appellant.

No. 93CA0615.

Colorado Court of Appeals, Div. III.

April 21, 1994.

---

\* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.* art. VI, § 5(3), and

§ 24–51–1105, C.R.S. (1993 Cum.Supp.).

Vinton, Slivka & Panasci, Richard P. Slivka, Margaret M. McClellan, Denver, for plaintiffs-appellees.

Lamm, Freeman & Butler, L.L.C., Tom W. Lamm, Patrick D. Butler, Boulder, for defendant-appellant.

Opinion by Judge CRISWELL.

In this declaratory judgment action, defendant, Kathleen Shea, appeals the trial court's summary judgment entered in favor of plaintiffs, James Knappenberger and Edwin Z. Brown, declaring plaintiffs to be bona fide purchasers of an interest in certain shares of stock which defendant had pledged as security for several loans made by plaintiffs to a third party. We affirm.

This action arose from three loans made by plaintiffs to Pro Steel Distributors, Inc., and Pros International, Inc. (borrowers), which were secured by defendant's pledge of certain shares of corporate stock which she owned. Defendant had pledged her shares of stock at the behest of an officer of these corporations, who was also her pastor.

The pledge agreements, which defendant voluntarily entered into either personally or through an appointed representative, provided that defendant pledged her stock as security for the loans. The agreements further appointed plaintiffs as "attorneys in fact" to sell the stock if borrowers defaulted on the loans, so as to reimburse them from the sale proceeds for amounts due under the loans, costs, and attorney fees. Defendant also executed, through her representative, irrevocable stock or bond powers transferring ownership of the stock.

It is uncontroverted that defendant received no consideration from borrowers in exchange for her pledge of stock to secure the loans. However, defendant admitted in depositions that she was fully aware of the effect of the pledge agreements and of plaintiffs' ability to sell the stock in the event of a loan default by borrowers.

Borrowers defaulted on the loans several months later, and defendant was notified that the stock would be sold to satisfy the debt. Defendant responded by asserting that borrowers had fraudulently induced her into pledging her stock as security for the loan, that she was unaware of the precarious financial condition of borrowers, and that she would bring legal action to prevent plaintiffs from selling the stock. Plaintiffs then brought this declaratory judgment action, in which the trial court entered summary judgment declaring that plaintiffs were bona fide purchasers of the security interests in the stock.

I.

A.

■ Defendant first asserts that the undisputed facts failed to establish plaintiffs' status as "purchasers" of the stock pursuant to the Colorado Uniform Commercial Code (UCC), § 4–8–302, C.R.S. (1992 Repl.Vol. 2). We disagree.

The general definitions contained in § 4–1–201, C.R.S. (1992 Repl.Vol. 2) are applicable to § 4–8–302. See § 4–8–102(6), C.R.S. (1992 Repl.Vol. 2). Section 4–1–201(32), C.R.S. (1992 Repl.Vol. 2) defines a purchase as a "taking ... by pledge ... or any other voluntary transaction creating an interest in property." Section 4–1–201(33), in turn, provides that a purchaser is "a person who takes by purchase."

Defendant concedes that she delivered her stock to plaintiffs in conjunction with a pledge agreement, that this pledge was voluntary, that the pledge created limited rights in that stock in favor of plaintiffs, and that plaintiffs gave value in exchange for this pledge. Accordingly, we reject defendant's assertion that plaintiffs were merely "holders" or "bailees" of the stock, rather than purchasers, as defined by § 4–1–201(32).

B.

Defendant also challenges the summary judgment because she asserts that genuine issues of material fact exist with respect to plaintiffs' good faith and their lack of notice of potential fraud claims affecting the stock. Because of the alleged existence of such disputed issues, defendant contends that the court erred in entering summary judgment for plaintiffs. Again, we disagree.

■ In reviewing the propriety of the trial court's grant of summary judgment, we must determine whether there is a clear

showing that no issue of material fact exists and, therefore, whether the moving party is entitled to judgment a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Gifford v. City of Colorado Springs,* 815 P.2d 1008 (Colo.App.1991). In order to make this determination, we must resolve all doubts as to the existence of material factual issues against the moving party and give the opposing party the benefit of any favorable inferences drawn from the facts. *Kaiser Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987).

■ However, once the moving party establishes the non-existence of any disputed issues of fact, the burden of proving the existence of a factual issue shifts to the opposing party. Failure of the opposing party to satisfy its burden entitles the moving party to summary judgment. *Gifford v. City of Colorado Springs, supra.*

Section 4–8–302(2), C.R.S. (1992 Repl.Vol. 2) provides that a "bona fide purchaser" is a purchaser for value in good faith and without notice of any adverse claim. A bona fide purchaser takes his or her rights in the security free of any adverse claim, including a claim of fraud. *See* § 4–8–302(3), C.R.S. (1992 Repl.Vol. 2).

Because we have concluded that plaintiffs were "purchasers" within the meaning of the statute, and because defendant further concedes that plaintiffs gave "value" for the stock pledge, our inquiry is limited to whether any genuine issue of material fact exists with respect to plaintiff's good faith and lack of notice of adverse claims. We conclude that no genuine issues of material fact exist respecting these subjects.

Section 4–1–201(19), C.R.S. (1992 Repl.Vol. 2) defines good faith as "honesty in fact in the conduct or transaction concerned." Under § 4–1–201(26), C.R.S. (1992 Repl.Vol. 2), a person has notice of a fact if he has actual knowledge or has reason to know from all the facts and circumstances known to him that the fact exists.

■ Plaintiffs asserted in their motion for summary judgment that they had acted in good faith and without notice of any adverse claim. Plaintiffs swore in affidavits that they had acted honestly and reasonably in the transaction, that all paperwork and documentation to the transaction was proper, that they had no actual notice of any claim of fraud possessed by defendant, and that they had no reason to know that such adverse claim existed.

In response, defendant asserted that she had been fraudulently induced into entering into the stock pledge agreement by *borrowers,* rather than plaintiffs. In support of her assertion that plaintiffs had accepted the stock pledge in bad faith, defendant cited plaintiffs' alleged business sophistication, the fact that plaintiffs had previously required security for loans, that plaintiffs' attorney had drafted the security documents, that the stock pledge agreement was allegedly unconscionable, and that plaintiffs had a duty to inquire about "questionable issues." These issues, according to defendant, consisted of plaintiffs' concerns regarding the borrower's financial stability, and in *retrospect,* plaintiffs' conclusion that borrowers had not been completely honest regarding their financial circumstances. Defendant attempts to extrapolate from these concerns the existence of a vaguely-defined affirmative duty on the part of plaintiffs to inquire further, the breach of which allegedly evidences bad faith.

We have reviewed the evidence relied upon by defendant, including defendant's deposition and those portions of plaintiffs' depositions which are in the record. We agree with the trial court that this evidence fails to establish any genuine issue of material fact. Defendant offered no evidence that would suggest that plaintiffs were associated with her pastor's alleged fraud or that they were put on notice of such alleged fraud until long after the loan and stock transactions had been completed and their status as bona fide purchasers had been established. *See Folsom v. Security National Bank,* 32 Colo.App. 91, 507 P.2d 1114 (1973) (stock transferee who knew of invalid certificates before time of transfer was not a bona fide purchaser).

Nor did defendant present any evidence which would establish the purported unconscionability of the stock pledge agreement. Indeed, defendant testified that she was fully aware of the purpose and effect of the stock

pledge agreements. *See Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo.App. 1988).

Although defendant may have a claim of fraud against her pastor, that claim cannot serve as a defense against a bona fide purchaser's exercise of rights. *See* § 4–8–302(3).

We conclude, therefore, that plaintiffs carried their burden of establishing the non-existence of any genuine issue of material fact with respect to plaintiffs' good faith and lack of notice of adverse claims. *See Gifford v. City of Colorado Springs, supra.*

## C.

Defendant also contends that, because the stock pledge agreements transferred to plaintiffs only a limited interest in the stock, rather than outright ownership of all rights in that property, the court erred in concluding that plaintiffs were purchasers under the UCC. We are not persuaded.

The parties to this appeal have spent considerable time arguing over whether, as bona fide purchasers, plaintiffs now have all, or merely some limited, rights in defendant's stock. These arguments miss the point of the trial court's ruling, which concluded that: "Plaintiffs have the right to sell the stock to recover the losses they incurred when borrowers defaulted on their promissory notes."

Thus, the trial court never concluded that plaintiffs had unlimited rights or absolute ownership of the stock. Indeed, defendant's brief in opposition to summary judgment admitted that: "[P]laintiffs do not have the right to foreclose on the stock, *but only have the right to sell the stock and reimburse themselves for the amounts owed under the promissory notes.*" (emphasis supplied) This is the precise remedy the trial court ordered.

Defendant's argument on this point, therefore, must be that the UCC prohibits a "purchase" of a limited security interest. If so, the argument lacks merit.

Section 4–8–301(2), C.R.S. (1992 Repl.Vol. 2) provides that:

A transferee of a limited right acquires rights only to the extent of the interest transferred. *The creation or release of a security interest in a security is a transfer of a limited interest in that security.* (emphasis supplied)

Section 4–8–302(3) further provides that: A bona fide purchaser, *in addition to acquiring the rights of a purchaser as provided in section 4–8–301,* also acquires his interest in the security free of any adverse claim. (emphasis supplied)

■ Therefore, the UCC expressly provides that a party who accepts a pledge of stock as security for a loan can become a bona fide purchaser of that security interest, which is, by definition, a limited interest. *See* W. Hawkland, T. Holland, & R. Anzivino, 7 *Uniform Commercial Code Series* § 8–301:06 (1984); *Aycock v. Texas Commerce Bank,* 127 Bankr. 17 (Bankr.S.D.Tex.1991); *Ogilvie v. Idaho Bank & Trust Co,* 99 Idaho 361, 582 P.2d 215 (1978).

■ As bona fide purchasers of that interest, plaintiffs became a favored sub-class of purchasers who prevail over all other claimants in the exercise of their security interest. *See Ogilvie v. Idaho Bank & Trust Co., supra.*

Defendant's reliance on *Ralph A. Veon, Inc. v. Hinks,* 12 B.R. 186 (Bankr.W.D.Pa. 1981) is misplaced. There, securities were transferred for the limited purpose of serving as bond for a mining permit application. The transfer document explicitly provided that the transferor retained full ownership of the securities and that the transferee took only a limited *possessory* interest for a limited time. Accordingly, the transferees were on notice of the transferor's continued *ownership* interest, and they could not become bona fide purchasers thereof. In contrast, here, the stock pledge agreement specifically authorized the transferees to sell the stock and to retain profits from that sale in the event of a default on the loans. Plaintiffs' interest in the stock was not limited to a purely possessory interest for a limited purpose or time.

## II.

■ We also reject defendant's assertion that the trial court erred in concluding that

the stock was not properly indorsed by defendant pursuant to § 4–8–302(2)(a) when plaintiffs took delivery of it.

Section 4–8–308(1) provides that:

An indorsement of a certificated security ... is made ... when an appropriate person signs ... on a separate document an assignment or transfer of the security or a power to assign or transfer it....

The stock pledge agreements here expressly transferred the stock to plaintiffs and specifically empowered plaintiffs to sell or transfer the shares in the event of a default without the need for further authorization. The trial court was correct in ruling that the stock pledge agreement constituted a proper indorsement.

### III.

Defendant also raises issues before this court which were not presented to the trial court; she also asserts several arguments for the first time in her reply brief. We decline to address these contentions. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990); *Wilson v. Board of County Commissioners*, 703 P.2d 1257 (Colo.1985).

Judgment affirmed.

DAVIDSON and TAUBMAN, JJ., concur.