166 P.3d 280 (2007)
COLORADO COMMUNITY HEALTH NETWORK; Colorado Children's Campaign; Joyce Laman; Colorado Consumer Health Initiative; and Colorado Tobacco Education and Prevention Alliance, Plaintiffs-Appellants,
v.
COLORADO GENERAL ASSEMBLY; Bill Ritter, Jr., in his official capacity as Governor of the State of Colorado; and Leslie M. Shenefelt, in his official capacity as Colorado State Controller, Defendants-Appellees.
No. 05CA2577.
Colorado Court of Appeals, Div. IV.
June 14, 2007.
*282 Kelly Garnsey Hubbell & Lass, LLC, David R. Fine, Martha M. Tierney, Denver, Colorado, for Plaintiffs-Appellants.
Holland & Hart, LLP, Maureen Reidy Witt, Jonathan S. Bender, Denver, Colorado, for Defendant-Appellee Colorado General Assembly.
John W. Suthers, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendants-Appellees Bill Ritter, Jr. and Leslie M. Shenefelt.
Opinion by: Judge NIETO.[*]
Plaintiffs, Colorado Community Health Network, Colorado Children's Campaign, Joyce Laman, Colorado Consumer Health Initiative, and Colorado Tobacco Education and Prevention Alliance, appeal the judgment in favor of defendants, Colorado General Assembly, Bill Ritter, Jr., in his official capacity as Governor of Colorado, and Leslie M. Shenefelt, in his official capacity as Colorado State Controller, upholding the constitutionality of House Bill 04-1455 (HB 1455). We affirm.
This action originally named Bill Owens, in his official capacity as Governor of Colorado, as a defendant. However, pursuant to C.A.R. 42(c)(1), Bill Ritter, Jr., in his official capacity as Governor of Colorado, was automatically substituted when he took office.
On March 17, 2004 the title board set the title for a proposed constitutional amendment. On November 2, 2004, a majority of the voters in Colorado approved Amendment 35 to the Colorado Constitution which imposes additional taxes on tobacco products to raise revenues for the expansion of health care programs for children and low income populations, tobacco education programs, and programs for smoking-related diseases. Section 6 of Amendment 35 provides that the revenues appropriated pursuant to the Amendment "shall be used to supplement revenues that are appropriated by the general assembly for health related purposes on the effective date of this section, and shall not be used to supplant those appropriated revenues" (emphasis added). Amendment 35 specified an effective date of January 1, 2005.
HB 1455 was enacted, without former Governor Bill Owens's signature, on June 5, 2005 after the title of Amendment 35 had been set, but before it was adopted by the citizens of Colorado. HB 1455 eliminated appropriations for enumerated health-related purposes on January 1, 2005. Thus, the appropriation for health-related purposes on the effective date of Amendment 35 was zero.
Plaintiffs filed suit, challenging the constitutionality of HB 1455. They alleged that HB 1455 was unconstitutional because it conflicted with Amendment 35 and violated the initiative power of the citizens of Colorado pursuant to Colo. Const. art. V, § 1.
On cross-motions for summary judgment, the trial court declared that (1) HB 1455 does *283 not conflict with Amendment 35 because Amendment 35 did "not require a specific amount, nor indeed any amount, be appropriated for the designated health-related purposes as of January 1, 2005"; (2) Amendment 35 was not "intended to be applied retrospectively to render unconstitutional House Bill 1455"; and (3) HB 1455 did not violate the initiative power of the citizens of Colorado pursuant to Colo. Const. art. V, § 1, because the initiative process "was carried out to completion." The supreme court denied plaintiffs' petition for writ of certiorari pursuant to C.A.R. 50.

I.
Plaintiffs contend that HB 1455 conflicts with Amendment 35, thereby rendering HB 1455 unconstitutional. We disagree.
We review the trial court's assessment of the constitutionality of HB 1455 de novo. See Gen. Motors Corp. v. City & County of Denver, 990 P.2d 59, 67 (Colo. 1999). We begin with the presumption that HB 1455 is constitutional, and we must uphold the statute unless plaintiffs prove it is unconstitutional beyond a reasonable doubt. See City of Greenwood Village v. Petitioners for Proposed City of Centennial, 3 P.3d 427, 440 (Colo.2000) (refusing to reformulate the beyond a reasonable doubt standard used to determine the constitutionality of a statute); Colo. Criminal Justice Reform Coal. v. Ortiz, 121 P.3d 288, 291 (Colo.App.2005) (applying the beyond a reasonable doubt standard to determine whether a house bill is unconstitutional). Further, we must uphold the statute unless "a `clear and unmistakable' conflict exists between the statute and a provision of the Colorado Constitution." E-470 Pub. Highway Auth. v. Revenig, 91 P.3d 1038, 1041 (Colo.2004); accord Owens v. Colo. Cong. of Parents, Teachers & Students, 92 P.3d 933, 942 (Colo.2004).
Plaintiffs argue that the purpose and intent of Amendment 35 to supplement, and not supplant, revenues for health-related purposes require that appropriations for health-related purposes exist on the effective date of Amendment 35; therefore, because HB 1455 eliminated appropriations for health-related purposes on the effective date of Amendment 35, it conflicts with the purpose and intent of Amendment 35. We are thus called upon to construe Amendment 35.
"When construing a constitutional amendment courts must ascertain and give effect to the intent of the electorate adopting the amendment." Zaner v. City of Brighton, 917 P.2d 280, 283 (Colo.1996). Courts must give words their ordinary and popular meaning in order to ascertain what the voters believed the amendment to mean when they adopted it. Davidson v. Sandstrom, 83 P.3d 648, 654 (Colo.2004). Courts should not engage in a narrow or technical construction of the initiated amendment if doing so would contravene the intent of the electorate. Zaner v. City of Brighton, supra, 917 P.2d at 283. When the language of an amendment is clear and unambiguous, the amendment must be enforced as written. Davidson v. Sandstrom, supra, 83 P.3d at 654.
Language in an amendment is ambiguous if it is "reasonably susceptible to more than one interpretation." Zaner v. City of Brighton, supra, 917 P.2d at 283. If the intent of the electorate is not clear from the language of the amendment, courts should construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment. Zaner v. City of Brighton, supra, 917 P.2d at 283. A court may discern that intent by considering materials such as the ballot title, the submission clause, and the biennial Bluebook analysis of ballot proposals prepared by the legislature. In re House Bill 99-1325, 979 P.2d 549, 554 (Colo.1999).
The plain language of Amendment 35 clearly and unambiguously provides that the General Assembly is responsible for setting the spending levels for health-related purposes from existing sources of revenue. Section 6 of the amendment provides that revenues appropriated from tobacco taxes mandated by the amendment shall be used to supplement "revenues that are appropriated by the General Assembly for health related purposes." The General Assembly has plenary power over the appropriation of "state monies," subject only to constitutional limitations. *284 See Colo. Const. art. V, § 33 ("No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law. . . ."); Dempsey v. Romer, 825 P.2d 44, 56 (Colo.1992); Colo. Gen. Assembly v. Lamm, 700 P.2d 508, 520 (Colo.1985); Anderson v. Lamm, 195 Colo. 437, 441, 579 P.2d 620, 623 (1978). Thus, HB 1455 constitutes legislative action specifically contemplated by Amendment 35 and the Colorado Constitution.
Contrary to plaintiffs' argument, there is nothing in Amendment 35 mandating a certain level of funding for health-related purposes or requiring that appropriations for health-related purposes from existing sources of revenue exist on January 1, 2005. Although Amendment 35 provides that the revenues generated from it will be used to "expand" and "increase" health-related programs and services, it does not restrict the General Assembly's ability to change the amount of appropriations for health-related purposes with respect to other existing sources of revenue. See §§ 2-4-215, 2-4-216, C.R.S.2006.
We conclude that the intent of the electorate is clear from the language of Amendment 35: the General Assembly is responsible for setting the spending levels for health-related purposes from existing sources of revenue. Therefore, it could set the appropriations at zero for January 1, 2005. This interpretation harmonizes the provisions of Amendment 35 and HB 1455 rather than creating an irreconcilable conflict.
The Bluebook supports this interpretation. Tivolino Teller House, Inc. v. Fagan, 926 P.2d 1208, 1214 (Colo.1996) (Bluebook, while not binding, provides insight into the electorates understanding of the amendment.). Specifically, the Bluebook explained that Amendment 35 "requires the legislature to maintain funding levels for existing health-related programs as of January 1, 2005, and to use the new revenue only to expand these programs." It also informed the electorate about the effect of HB 1455 on the proposed Amendment:
This proposal and current law. In 2004, the state legislature passed a law in anticipation of this proposal. The law does not affect how the new money raised from this proposal is distributed. However, it declares that the legislature is responsible for setting the spending levels for health-related programs from existing sources of revenue.
The Bluebook's fiscal impact analysis stated that "[c]urrent law reduces revenue for health-related purposes as of January 1, 2005, in order to preserve the power of the legislature to appropriate existing funds for state programs and functions."
We therefore conclude plaintiffs have failed to prove the unconstitutionality of HB 1455 beyond a reasonable doubt.
Because we have concluded there is no conflict between Amendment 35 and HB 1455, we need not address the trial court's holding that Amendment 35 was not intended to apply retrospectively. We also do not address plaintiffs' argument that HB 1455 did not constitute an appropriation because this argument was raised for the first time in their reply brief. See People v. Czemerynski, 786 P.2d 1100 (Colo.1990); Knappenberger v. Shea, 874 P.2d 498 (Colo.App.1994) (arguments raised for first time in reply brief will not be considered).

II.
Plaintiffs also argue that the passage of HB 1455, after the title for Amendment 35 had been set, but before Amendment 35 had been adopted by the citizens of Colorado, violated art. V, § 1 of the Colorado Constitution. Again, we disagree.
The political power of this state is vested in the people. Pursuant to Colo. Const. art. V, § 1, the people have reserved to themselves the right of initiative "independent of the legislature." The initiative power is self-executing, and the power of initiative is to be liberally construed to allow the greatest possible exercise of this valuable right. Acts of the legislature that affect the exercise of the initiative right must further the purpose of the right or facilitate its operation; if they do not, the legislative acts are invalid. City of Glendale v. Buchanan, 195 Colo. 267, 272, 578 P.2d 221, 224 (1978); see also In re *285 House Bill 1078, 189 Colo. 1, 8, 536 P.2d 308, 314 (1975); Colo. Project-Common Cause v. Anderson, 177 Colo. 402, 495 P.2d 218 (1972). "It is well established in this state that the Legislature may not impose restrictions which limit in any way the right of the people [to] initiate proposed laws and amendments except as those limitations are provided in the constitution itself." Colo. Project-Common Cause v. Anderson, supra, 177 Colo. at 404, 495 P.2d at 219.
"Unless convinced that voters have been misled, a reviewing court must assume that the voters cast informed ballots. Where an initiated amendment is at issue, this presumption is even more vital." City of Glendale v. Buchanan, supra, 195 Colo. at 273, 578 P.2d at 225 (citations omitted).
Plaintiffs have failed to articulate how the initiative process was violated. HB 1455 does not impose restrictions that limit in any way the right of the citizens to initiate proposed amendments. Indeed, it does not even pertain to the initiative process.
Nevertheless, plaintiffs assert that HB 1455 "eviscerated a key component" of Amendment 35 by eliminating appropriations on January 1, 2005, and therefore, "the passage of HB 1455 thwarted the rights of Colorado citizens to pass the Amendment as intended by its proponents and understood by the voters." However, as we previously concluded, HB 1455 did not violate "a key component" of Amendment 35 by eliminating appropriations for health-related purposes on January 1, 2005. Therefore, we reject plaintiffs' argument that HB 1455 thwarted the rights of Colorado citizens to pass Amendment 35 as understood by the voters.
In addition, the presumption that voters understood Amendment 35 and cast informed ballots is strengthened by the fact that the constitutional publication requirements were complied with here. See Carrara Place, Ltd. v. Arapahoe County Bd. of Equalization, 761 P.2d 197, 203 (Colo.1988) ("The legislative council's interpretation, while not binding, provides important insight into the electorate's understanding of the amendment when it was passed."). The Bluebook informed the electorate that the General Assembly had passed a law (HB 1455) that reserved for the General Assembly the "responsibility for setting the spending levels for health related programs from existing sources of revenue" and that current law reduced the revenues for health related purposes as of January 1, 2005.
We therefore conclude that plaintiffs have failed to establish that the initiative power was violated by the passage of HB 1455. The judgment is affirmed.
HAWTHORNE and CRISWELL*, JJ., concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2006.