Opinion by JUDGE BOORAS
¶ 1 Appellant, Liberty Bankers Life Insurance Company (Liberty), appeals the judgment and dismissal with prejudice of its counterclaims against appellee, First Citizens Bank & Trust Company (FCBT). We affirm the judgment.
I. Background
¶ 2 The underlying claims in this case relate to Liberty's participation in two loans with Colorado Capital Bank (CCB) for the purpose of funding the development of a townhome project, with one loan entered into on June 2, 2009, and the other entered into on March 12, 2010. CCB was closed by the Colorado Division of Banking on July 8, 2011, and the Federal Deposit Insurance Corporation (FDIC) was named its receiver (FDIC-R). On the same day, FCBT purchased the assets and assumed the liabilities of CCB in a purchase and assumption agreement. As required by the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d)(3)(B) (2012), the FDIC published notices in the Denver Post in July, August, and September of 2011 that advised potential claimants to submit proofs of claims in writing to the FDIC before October 13, 2011. The FDIC also provided Liberty with an individual notice on October 12, 2011, that failure to file a claim prior to the bar date would result in a final disallowance of the claim.
*114 ¶ 3 Liberty timely submitted its proof of claim with the FDIC on October 12, 2011, which stated, in pertinent part:
After maturity and prior to July 8, 2011, Colorado Capital Bank took no action to foreclose on the collateral or pursue any other enforcement action. In addition to the foregoing, Colorado Capital failed to make interim interest payments from available escrows and failed to facilitate the sale of Townhome units to third parties. Such conduct was in breach of the covenants of good faith and fair dealing. Colorado Capital Bank's conduct or omissions rises to the level of gross negligence or willful misconduct.
The FDIC denied this claim on November 21, 2011, and on January 20, 2012, Liberty filed suit against FCBT and the FDIC-R in federal court.
¶ 4 In the federal litigation, the FDIC-R moved to dismiss Liberty's complaint against it on the grounds that "[u]nder the plain terms of the Purchase & Assumption Agreement, all of Colorado Capital's rights, interests, liabilities and obligations under these agreements were transferred to [FCBT] on July 8, 2011. This transfer extinguished any liability of FDIC-R for the claims asserted by [Liberty]." On April 18, 2012, after a stipulation by FCBT to this representation, Liberty sought leave to amend its complaint to delete the declaratory relief sought against the FDIC-R. Liberty was added as a third party to the state court proceedings[1] by way of a claim for declaratory relief by FCBT in June 2012.
¶ 5 In the state court proceedings, Liberty filed twelve counterclaims against FCBT-Counts One through Three included claims for breach of contract, breach of the implied duty of good faith and fair dealing, and gross negligence, which had each generally appeared in the proof of claim. Counts Four through Ten and Twelve did not appear in Liberty's Proof of Claim, and included claims of fraud, fraudulent inducement, securities fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, breach of fiduciary duty, money had and received, and attorney fees and costs.
¶ 6 The district court dismissed with prejudice Counts One through Three of Liberty's counterclaims on the grounds that, with the additional facts and assertions, they no longer appeared to be the same claims as those articulated in its proof of claim. The district court dismissed with prejudice Counts Four through Ten and Twelve because they were not contained in Liberty's proof of claim.[2] Together, the court found that it was thereby deprived of subject matter jurisdiction over the matter because Liberty had failed to exhaust its administrative remedies.
II. Lack of Subject Matter Jurisdiction
¶ 7 Liberty argues that the district court incorrectly dismissed its Counts One through Three for lack of subject matter jurisdiction. Liberty argues first that it included in its proof of claim, and thereby properly exhausted, the claims found in its counterclaims. Second, Liberty argues that the doctrine of administrative exhaustion does not apply because its pursuit of relief would have been futile after substantially all assets and liabilities of CCB were transferred to FCBT on the same day as the FDIC was appointed receiver. We disagree.
A. Exhaustion of Administrative Remedies
1. Preservation & Standard of Review
¶ 8 The parties agree that this issue was preserved in the trial court. Whether Liberty properly pleaded the claims found in its counterclaims in the original proof of claim presents a mixed question of fact and law. We review a trial court's findings of disputed fact for clear error, but apply the de novo standard of review to the court's legal conclusions. See, e.g., People v. Gennings, 808 P.2d 839, 844 (Colo.1991) ; see also Thomas v. Fed. Deposit Ins. Corp., 255 P.3d 1073, 1077 (Colo.2011) ("When a trial court's *115 ruling on a C.R.C.P. 12(b)(1) motion hinges on determinations of fact, we review it for clear error," but where "the motion presents pure questions of law," we apply de novo review.).
2. Law
¶ 9 FIRREA enables the FDIC to "administer a streamlined claims procedure designed to dispose of the bulk of claims against failed financial institutions expeditiously and fairly." Fed. Deposit Ins. Corp. v. Updike Bros., Inc., 814 F.Supp. 1035, 1038 (D.Wyo.1993). The statute requires that creditors "present their claims, together with proof, to the receiver ... not less than 90 days after the publication of ... notice." 12 U.S.C. § 1821(d)(3)(B)(i). Section 1821(d)(13)(D) creates a jurisdictional bar to such claims, stating:
No court shall have jurisdiction over ... any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver [or] any claim relating to any act or omission of such institution or the Corporation as receiver.
12 U.S.C. § 1821(d)(13)(D)(i)-(D)(ii). Subject matter jurisdiction over such a claim, therefore, can exist only after "the claim has been timely filed with the receiver and the administrative process has been exhausted." Thomas, 255 P.3d at 1079.
¶ 10 FIRREA does not define the term "claim," and although this issue remains unresolved in federal law, numerous federal courts that have addressed similar disputes have held that the proof of claim must contain "fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution."[3] Brown Leasing Co. v. Fed. Deposit Ins. Corp., 833 F.Supp. 672, 675 (N.D.Ill.1993) ; see also, e.g., Jahn v. Fed. Deposit Ins. Corp., 828 F.Supp.2d 305, 316 (D.D.C.2011). Where "a complaint alleges entirely new legal theories that are different than those reflected in the administrative proof of claim, the Court is without subject matter jurisdiction to consider the new causes of action." Jahn, 828 F.Supp.2d at 317 ; cf. Branch v. Fed. Deposit Ins. Corp., 833 F.Supp. 56, 61-62 (D.Mass.1993) (plaintiff exhausted administrative process where his complaints and proofs of claim were "based upon the same general set of facts ... [and the] same legal causes of action").
3. Application
¶ 11 The district court correctly noted that, although they contained similarly-phrased claims of breach of contract and breach of the implied duty of good faith, Counts One through Three of Liberty's counterclaims incorporate substantial factual allegations that were not present in the proof of claim, which included only three brief allegations of CCB's conduct. Notably, two of the proof of claim allegations-that CCB "took no action to foreclose on the collateral or pursue any other enforcement action" and "failed to make interim interest payments from available escrows"-were not raised in Liberty's counterclaims.
¶ 12 The additional facts and assertions contained in Count One focused primarily on CCB's failure to renew a letter of credit to the county where the project was located, such that units were unable to be sold. As FCBT and the trial court noted, when considered with the three brief factual assertions of conduct contained in the proof of claim, the additional factual assertions cause the counterclaims to appear inconsistent. Although the additional factual allegations contained in the counterclaims might arguably be said to relate to the third allegation that CCB failed to "facilitate the sale of Townhome units to third parties," it does so only in hindsight. Consequently, such a brief statement of Liberty's claims in its proof of claim could not have been expected to sufficiently put the FDIC on notice of the causes of action alleged in Counts One through *116 Three of its counterclaims. Thus, holding so would " 'frustrate FIRREA's intended purpose of expeditiously and fairly resolving the majority of claims against failed institutions without protracted litigation.' " Fed. Deposit Ins. Corp. v. Abbott, No. CCB-12-2111, 2013 WL 4924495, at *5 (D.Md. Sept. 11, 2013) (unpublished order) (quoting Brown Leasing, 833 F.Supp. at 676 ) (only one of party's later breach of contract theories was sufficiently pleaded in the proof of claim and that claim included a detailed factual recitation).
¶ 13 To the extent that Liberty argues that the Participation Agreements attached to the proof of claim added support to the included claims, several courts have noted that references in such attached exhibits are insufficient to exhaust claims, "as the FDIC is not required to predict what causes of action a claimant may bring." FirsTier Bank, Kimball, Neb. v. Fed. Deposit Ins. Corp., 935 F.Supp.2d 1109, 1122 (D.Colo.2013) (citing Brown Leasing, 833 F.Supp. at 675-76 ); Ravenswood, LLC v. Fed. Deposit Ins. Corp., No. 10-CV-1064, 2011 WL 1079495, at *5 (N.D.Ill. Mar. 21, 2011) (unpublished order) (failure to mention in proof of claim a diminution in value theory or any calculation of damages based on that theory resulted in failure to raise claim). It is not necessary, however, as Liberty argues, to plead every applicable fact, so long as the proof of claim gives the FDIC fair notice of the claim. See Branch, 833 F.Supp. at 60-61 (although Branch omitted reference to several individual transactions, the proof of claim adequately alleged a broad pattern of similar transfers, and the latter claims were sufficiently "based upon the same general set of facts"). The addition of supporting evidence not originally provided with the proof of claim is appropriate only in cases where the claims had been sufficiently pleaded in the proof of claim and no "new legal claims" were being brought. See Nants v. Fed. Deposit Ins. Corp., 864 F.Supp. 1211, 1218 (S.D.Fla.1994).
¶ 14 As the district court noted, however, the level of additional factual allegations is such that, although the counts contain similar language, they can no longer be considered the same claim. See, e.g., Coleman v. Fed. Deposit Ins. Corp., 826 F.Supp. 31, 32 (D.Mass.1993) (although labeled the same, the factual allegations and theories of relief in the latter claims were so different as to render them entirely new claims). Liberty's counterclaims One through Three cannot be said to have been included in its proof of claim, and therefore were not exhausted.
B. Futile Pursuit of Relief
1. Preservation & Standard of Review
¶ 15 The parties agree that this issue was preserved in the trial court. We review a question of law, such as whether the requirement of exhaustion of administrative remedies applies, de novo. New Design Constr. Co. v. Hamon Contractors, Inc., 215 P.3d 1172, 1178 (Colo.App.2008).
2. Law
¶ 16 "The doctrine of exhaustion of administrative remedies serves as a threshold to judicial review that requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court." Id. at 1178 (citing State v. Golden's Concrete Co., 962 P.2d 919, 923 (Colo.1998) ). If the parties fail to administratively exhaust their claims, the district court is without subject matter jurisdiction to hear them unless an exception applies. Golden's Concrete Co., 962 P.2d at 923 ; New Design, 215 P.3d at 1178.
¶ 17 One such exception exists when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." City & Cnty. of Denver v. United Air Lines, Inc., 8 P.3d 1206, 1213 (Colo.2000) (internal quotation marks omitted). "If the agency refuses to reconsider its decisions or procedures, or has stated a categorical rule to apply in a group [of] cases, rendering exhaustion futile, requiring [exhaustion] would not further such interests as allowing the agency to correct its own errors and to develop a record for judicial review." Id. (citing Kuhn v. Dep't of Revenue, 817 P.2d 101, 104 (Colo.1991) ).
*117 3. Application
¶ 18 Liberty's futility argument is based on (1) the transfer of assets and liabilities to FCBT and (2) the FDIC-R's motion to dismiss in the federal litigation. First, Liberty argues that because the assets and liabilities of CCB were transferred to FCBT on the same day the FDIC was appointed as receiver, the FDIC-R no longer owned the assets or liabilities of CCB, and therefore had no assets from which Liberty's claims could be paid.
¶ 19 As the district court observed, numerous federal and state cases have suggested that the jurisdictional bar extends to successors in interest of the failed bank. See, e.g., Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1212, 1214 (9th Cir.2012) (jurisdictional bar extends to purchasing bank "when the claim is based on the conduct of the failed institution"); Am. First Fed. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 n. 3 (11th Cir.1999) (jurisdictional bar extends to purchaser of bank assets); Saffer v. JP Morgan Chase Bank, 225 Cal.App.4th 1239, 171 Cal.Rptr.3d 111, 123-24 (2014) ; cf. Am. Nat. Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1142-43 (D.C.Cir.2011) (the D.C. Circuit has construed the claims process broadly where the failed institution or FDIC-R "might be held legally responsible to pay or otherwise resolve the asserted claim"). The Sixth Circuit noted in Village of Oakwood v. State Bank and Trust Co. that to allow claimants to circumvent the provisions of FIRREA's jurisdictional bar "by bringing claims against the assuming bank ... would encourage the very litigation that FIRREA aimed to avoid." 539 F.3d 373, 386 (6th Cir.2008) (internal quotation marks omitted). Liberty appears to request the same circumvention here.
¶ 20 Simply because assets have been transferred does not mean that the FDIC-R would not be able to provide relief for Liberty's claims. In Rosa v. Resolution Trust Corp., the plaintiffs also argued that exhaustion would be futile where the receiver would be unable to provide them with monetary relief for their claims against a failed bank where assets and liabilities had also been assumed by another bank. 938 F.2d 383, 388-89, 395 (3d Cir.1991). The court rejected the plaintiffs' futility argument, stating:
We are unable at this stage to say that the receiver could not compensate plaintiffs through the claims procedure. The assets available for these and other creditors, as well as plaintiffs' priority status, are neither part of the record before us nor determinable by this court at this juncture but are properly determinable by the receiver.
Id. at 395. We find this to also be the case here.
¶ 21 Second, Liberty argues that the FDIC-R's actions, by successfully moving to dismiss Liberty's claims against it in the federal litigation, on the basis of the asset and liability transfer to FCBT, rendered its pursuit of relief futile.[4] In the cases where futility was found, the agency refused to grant the relief requested or, alternatively, asserted a categorical rule that rendered exhaustion futile. See, e.g., Kuhn, 817 P.2d at 104 ; New Design, 215 P.3d at 1180 (stipulation of CDOT stating that "CDOT would not entertain a claim that involved a dispute solely between a contractor and a subcontractor").
¶ 22 Even if the FDIC-R's argument for dismissal was erroneous, simply obtaining dismissal in the federal litigation did not render exhaustion of Liberty's claims futile. By failing to properly plead its claims in the proof of claim, Liberty had already failed to exhaust the process provided to it-the FDIC-R's actions, therefore, had no bearing on futility. Liberty's pursuit of relief, therefore, is not futile "beyond a reasonable doubt," and does not excuse its failure to exhaust its claims. United Air Lines, 8 P.3d at 1213.
¶ 23 Accordingly, we conclude that, because the futility exception does not apply, and because Counts One through Three of Liberty's counterclaims were not sufficiently *118 presented in the proof of claim, the district court correctly dismissed those claims for lack of subject matter jurisdiction.
III. Due Process
¶ 24 Liberty claims that the district court violated its due process rights by requiring it to raise, in their proof of claim to the FDIC, facts and legal claims which were unknowable at the time. Liberty contends that this issue was raised in the district court. Our review of the record, however, shows that it was not sufficiently raised.
¶ 25 We do not address issues that have not been sufficiently preserved in the trial court. People v. Syrie, 101 P.3d 219, 223 n. 7 (Colo.2004) ( "[T]he trial court must have adequate opportunity to make factual findings and legal conclusions on any issue that is later raised on appeal."); People v. Salazar, 964 P.2d 502, 507 (Colo.1998). Liberty made several vague assertions of "due process" or "constitutional issues" in the hearing on the Motion to Dismiss, in its Surreply in Opposition to the Motion to Dismiss, in its Response to FCBT's Motion and Brief in Limine, and in the Motion to Clarify Ruling.[5] However, none of these assertions were sufficient to provide the court with notice of the issue or an opportunity to rule on it. See People v. Melendez, 102 P.3d 315, 322 (Colo.2004) (although parties are not required to use "talismanic language" to preserve arguments for appeal, "the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law").
¶ 26 First, several of the assertions were made in pleadings that would not have alerted the court to Liberty's due process argument. Flagstaff Enters. Constr. Inc. v. Snow, 908 P.2d 1183, 1185 (Colo.App.1995) (citing People v. Czemerynski, 786 P.2d 1100 (Colo.1990) ); Knappenberger v. Shea, 874 P.2d 498, 503 (Colo.App.1994) (issue raised for the first time in a reply brief on a post-trial motion was insufficiently preserved because the opposing side was unable to address the contention before the trial court and the trial court made no findings or conclusions based on it). In fact, three of these instances occurred after the court had already ruled on the lack of subject matter jurisdiction. See Dahl v. Young, 862 P.2d 969, 972 (Colo.App.1993) (issue raised after all evidence and argument concluded was not sufficiently preserved).
¶ 27 Moreover, each cited-to instance of preservation was vague and conclusory, there was no clear argument in support, and there were no citations to authority. See Comm. for Better Health Care for All Colo. Citizens by Schrier v. Meyer, 830 P.2d 884, 890 (Colo. 1992) (a party's argument is insufficiently raised where "[r]eferences in its trial and appellate briefs to First Amendment rights were stated in conclusionary [sic] form, were not accompanied by citations to any authority, and appeared solely in the context of [other] arguments"); but see Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo.App.2010) (presenting sum and substance of argument during closing arguments at trial preserved argument for appellate review). Because we conclude that Liberty's due process argument was not sufficiently raised below, we will not consider it here.
IV. Improper Discussion of Nonjurisdictional Issues
¶ 28 To the extent that we have found the district court's dismissal of Liberty's Counts One through Three for lack of subject matter jurisdiction correct, we need not address Liberty's arguments with regard to any alternative rulings made by the district court.
V. FCBT's Request for Attorney Fees on Appeal
¶ 29 FCBT claims that it is entitled to reasonable attorney fees incurred on appeal under section 13-17-201, C.R.S.2014. We disagree.
¶ 30 The statute states, in pertinent part, that "[i]n all actions [dismissed under C.R.C.P. 12(b) prior to trial and] brought as a result of ... an injury to person or proper *119 ty occasioned by the tort of any other person, ... such defendant shall have judgment for his reasonable attorney fees in defending the action." Id. (emphasis added). Fees of successful tort defendants have also been held recoverable on appeal. Kreft v. Adolph Coors Co., 170 P.3d 854, 859 (Colo.App.2007).
¶ 31 In determining whether attorney fees should be awarded under section 13-17-201, the characterization of the claims in the complaint as tort claims is controlling. Castro v. Lintz, 2014 COA 91, ¶ 16, 338 P.3d 1063. However, when a plaintiff has pleaded both tort and non-tort claims, we "must determine, as a matter of law, whether the essence of the action was one in tort, in order to ascertain if section 13-17-201 applies." Id.
¶ 32 Here, while Count Three of Liberty's counterclaims facially alleged a tort claim of gross negligence and willful misconduct, the overall action is more accurately characterized as a contract action since all of the counterclaims, including Count Three, were based on acts or omissions relating to the alleged breach of the two participation agreements. Because the essence of Liberty's action did not sound in tort, FCBT is not entitled to attorney fees incurred on appeal under section 13-17-201. Id. at ¶ 34 ; see also Dubray v. Intertribal Bison Coop., 192 P.3d 604, 607 (Colo.App.2008) (when the action contains a mix of contract and tort claims, fees may be awarded if the action primarily sounds in tort).
VI. Conclusion
¶ 33 The judgment is affirmed.
JUDGE GRAHAM and JUDGE LICHTENSTEIN concur.

The state court proceedings began on March 10, 2011, with a claim by Wexford Borrowers, LLC, against CCB. FCBT was substituted as defendant on August 30, 2011.

Liberty's Count Eleven was disposed of in a separate motion to dismiss and is not being challenged in this appeal.

Although we are not bound by decisions of the lower federal courts when interpreting federal law, we may look to federal decisions for guidance and follow the analysis that we find persuasive. Cmty. Hosp. v. Fail, 969 P.2d 667, 672 (Colo.1998) (citing People v. Barber, 799 P.2d 936, 939-40 (Colo.1990) )

Liberty, instead of challenging the FDIC-R's argument, later amended its complaint to remove the FDIC-R as a party based on a stipulation by FCBT that FCBT had assumed the assets and liabilities of CCB.

These pleadings were identified by Liberty on appeal to support its assertion that the due process claim was preserved. We are not required to search the record for any additional evidence of preservation. See O'Quinn v. Baca, 250 P.3d 629, 631 (Colo.App.2010).